## Lewis, et al. v. Shell.

(Decided November 18, 1924.)

### Appeal from Harlan Circuit Court.

1. Appeal and Error—Where Material Facts Established, Reviewing Court Must Give Judgment for Party Entitled Thereto, Notwithstanding Chancellor's Findings.—While it is rule to give much weight to findings of chancellor on facts, and not to disturb his findings on credibility of witnesses, where mind is left in doubt as to truth, still where material facts are established, reviewing court must give judgment for party entitled thereto on facts.

2. Evidence—Parol Evidence as to What Person Said Many Years Before Received with Caution.—Parol evidence as to what person said many years before is to be received with caution.

3. Limitation of Actions—Limitations Must be Pleaded.—Limitations must be pleaded.

4. Limitation of Actions—Limitations do Not Run Against Person in Possession of Land.—Limitations against action to cancel and set aside deed, as never having been delivered with intent to convey title, did not run against grantor who remained in possession of land.

5. Deeds—Deed Takes Effect from Delivery—Nothing Passes Until Delivery.—Deed takes effect from Delivery, and passes nothing until delivery.

6. Deeds—Evidence Held to Show Paper was Never Delivered as Deed.—In atcion to cancel and set aside alleged deed, evidence held to show paper was never delivered as deed, and was void.

JAMES H. JEFFRIES for appellants.

J. S. FORESTER for appellee.

Opinion of the Court by Commissioner Hobson—Reversing.

Louisa Lewis and her present husband, John Lewis, brought this action against John D. Shell on June 29, 1921, to cancel and set aside an alleged deed executed on February 20, 1904, by Louisa Lewis, then Miller, and her husband, John A. Miller, on the ground that the deed was without consideration and was never delivered but had been some years afterwards obtained from her by John Shell to use in surveying a line and had not been returned to her and after this had been by him lodged for record on June 5, 1912. The allegations of the petition were denied by answer; proof was taken and on final hearing the petition was dismissed. The plaintiffs appeal.

The proof for the plaintiffs shows these facts: The tract of land contains about 150 acres. It was inherited by Louisa from her father and it had been her home for many years. They had a water mill on the place, which her husband ran, and they had two tenant houses on the place. Henry Shell, Jr., a nephew, was living in one of these houses in 1904. About that time the Burt & Brabb Lumber Company was getting out timber in that neighborhood and had brought into it a number of timber men. Henry Shell was selling whiskey in violation of law to these men and others and this became quite notorious in the neighborhood. Some one told her it must be stopped or the United States court would take her farm from her. She could neither read nor write, went little from home, had never seen a railroad train and knew little of the ways of the world. Her husband, John A. Miller, was blind and could be of little help to her. Some one suggested to her to make a deed for her farm to some man who could put Henry Shell off, as she felt unable to accomplish this. The fact is, she was afraid of him. She offered to make a deed of this kind to William Creech, who was a deputy clerk and a neighbor. Creech declined to take a deed and then the deed was written by Creech to her brother, John D. Shell, without any consideration and simply for the purpose of having him authorized to get Henry Shell off, which he did. The deed remained at her house and in her possession until the fall of the year 1911, when her brother borrowed it to have some surveying done on one of his lines and did not return it as he agreed to do; and after the death of her husband, John A. Miller, had it recorded in February, 1912.

She remained in possession of the place from 1904 to the present time, using it in every way as her own, selling the timber from it. Her husband, John A. Miller, paid the taxes on the land as long as he lived. A year or so after Miller's death she married her present husband, John Lewis. She is now over eighty years of age and her husband, John Lewis, who is about the same age, is an invalid from rheumatism. The land is their home and their only means of support.

On the other hand, the proof for the defendant is that he bought the land from his sister and her husband for $450.00, which he paid her and that it was agreed at the time that she was to hold the land as long as she lived; that the deed was delivered to him at the time and that she afterwards told a number of people that she had sold the land to him.

While the rule of this court is to give much weight to the finding of the chancellor on facts and not to disturb the chancellor's findings on the credibility of witnesses where the mind is left in doubt as to the truth, still where the facts on which the case really turns are established the court must give judgment for the party entitled thereto on the facts.

In the first place, looking to the situation and circumstances of the parties, we find nothing to sustain the defendant's version of the transaction. Louisa and her husband, Miller, had lived on this land all their married life; they had no idea of moving; they had no reason for selling; they were not in debt; they had no children; they did not need money. They had then a cash offer of $500.00 for the land, which they turned down. On the same day that this deed was drawn they sold and conveyed another tract that she owned to Robert Lewis for $500.00, which was to be paid along as she needed it, and this money, over and above the proceeds of the farm, supplied all that she and her husband needed in their simple way of living for years to come.

In the second place, what took place at the time does not bear out the defendant's version of the transaction. Though there were several persons present no one testifies as to any discussion of the price to be paid. The land was worth at least $1,200.00. By what discussion the sum of $450.00 was fixed does not appear. The defendant gave no note, he paid nothing down and there was no agreement when or how he was to pay the $450.00. The deed is an absolute deed to him for the land, reserving no

interest in it to Louisa or her husband, and if it was delivered he had the right to move her and her blind husband out of the place the next morning.

The subsequent conduct of both parties is clearly inconsistent with the defendant's version of the transaction. Louisa not only remained upon the land as she had before, but she was then having the timber cut off the land and had this means of support in addition to the money above referred to. She afterwards went on and made other contracts from year to year for the sale of the timber from the land, which then constituted its chief value. First and last, she sold from eight hundred to one thousand dollars' worth of timber off the place, all without any objection on the part of her brother, John D. Shell, when these trees were a part of the realty and she as a life tenant was without authority to cut and sell any of them without his consent. She did not recognize his rights in any way and did as she pleased with the proceeds of the timber with his knowledge and without any objecton on his part. In an effort to explain how he paid her the $450.00 he says that she got the proceeds of this timber, which was his, and that in this way she was paid the larger part of the $450.00. But if this was true the remainder of the price of the timber was his and not hers and he had a right to require her to pay him the balance of the money she received. But he never made any such demand and never asked a settlement. So far as the record shows, the first claim that he had thus paid a large part of the purchase money of the land was first made in this suit.

The proof is conclusive that he in fact got the deed from her in the fall of 1910, saying that he needed it to make a survey on his place adjoining. He says that he had delivered the deed back to her only a short time before this and had had it for years, but he does not give any reason why the deed, if he ever had it, was returned to her. She couldn't read or write; she had no use for it if it was his deed and no possible excuse is offered why this deed if delivered in 1904 was not then recorded. The fact that it was not recorded and that when it turns up in 1910 it is in her possession is a potent circumstance sustaining her version of this transaction.

Appellee is a business man and may be expected to act as other business men; but he does not explain why he gave no note for the purchase money, or why he took no receipts for the payments he says he made, or tell why

when he settled the store account he says he paid for her, he did not present the account to her or at some time have a settlement with her. He is here without a note given for the purchase money or any receipt or any paper of any kind showing he has paid her anything. Business transactions where land is in truth sold and paid for are not reasonably carried out in this way.

Appellee is six years younger than his sister. He owns 1,000 acres of land and is a man of means. He has done nothing more for his sister in the way of aiding her than a brother in his circumstances might reasonably be expected to do for a sister in her circumstances. Under all the evidence and the circumstances, her testimony that he paid her nothing at any time on the land is the most reasonable conclusion from the facts.

It is true he proves by a number of witnesses that she said she had sold the land to her brother and told them to see John about renting it. But most of these statements were made about the time the deed was gotten up and were plainly made to carry out the purpose for which the deed was written. The others were made after John had had the deed recorded, when she did not know her rights, for she was very ignorant.

These declarations are so inconsistent with the conduct of both parties that little weight should be given to this testimony, if these statements were not made for the purpose above indicated. It has been well said that parol evidence as to what a person said many years ago is to be received with caution for the reason that a very slight change in words would often entirely rob the evidence of any value.

Limitation was not pleaded, and as appellant remained in possession of the land the statute did not run against her. Vanover v. Maggard, 157 Ky. 743.

A deed takes effect from delivery. It passes nothing until delivered. The facts established here force the conviction that the paper was never delivered as a deed and is void. Sutton v. Gibson, 119 Ky. 422; Dunbar v. Meadows, 165 Ky. 275; Justice v. Peters, 168 Ky. 583; Kirby v. Hulette, 174 Ky. 257; Ball v. Sandlin, 176 Ky. 537.

Judgment reversed and cause remanded for a judgment as above indicated.