## Downing, Executor v. Whitlow, et al.

(Decided November 17, 1925.)

### Appeal from Marion Circuit Court.

1. Gifts—Note Payable to Decedent Held Not to Constitute Gift Inter Vivos to Makers Thereof.—Note Payable to decedent, claimed given by her to makers as gift, held, evidence, not within rule governing gifts inter vivos, since it was not fully executed as gift by delivery by donor and acceptance thereof by donee.

2. Appeal and error—Finding of Chancellor that Named Amount of Money Represented by Note was Intended as Gift Held Against Weight of Evidence.—Finding of Chancellor that named amount of money, which was represented by note to decedent, was given by decedent to plaintiffs before execution of note as absolute gift, which was consummated before note was executed, held against great weight of evidence.

3. Bills and Notes—Presumption is, in Absence of Proof to Contrary, that Note Found in Possession of Payee has Not been Paid.—The presumption is, in absence of proof to contrary, that note found in possession of payee has not been paid.

4. Gifts—Burden Held to be on Signers of Note to Overcome Presumption from Payee's Possession.—Where it was alleged by plaintiff that named amount of money represented by note was given to plaintiffs before execution of note as absolute gift, which was consummated before note was executed, since presumption was, in absence of proof to contrary, that note found in payee's possession had not been paid, burden was on plaintiffs as makers to overcome such presumption.

CHARLES C. BOLDRICK, BURNETT, BATSON & CARY and J. W. WELCH for appellant.

H. S. McELROY for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The questions presented by this appeal are, whether the note for $3,000.00 signed by appellees, Gertrude Whitlow and husband, W. R. Whitlow, payable to Mrs. H. S. Cox, was given by the latter to the former in such manner as to constitute a gift *inter vivos;* and, if not so, was the note in suit executed and delivered without consideration?

In January, 1923, Mrs. Benna W. Cox died testate a resident of and domiciled in Jefferson county, Kentucky. She made her will some years before designating appellant, John R. Downing, as executor. Appellee, Mrs. Gertrude H. Whitlow, a niece of the testatrix, was the principal beneficiary.

The original petition in the suit by the executor averred that the note for $3,000.00, reading:

"December 15th, 1912.

"$3,000.00.

"One day after date I promised to pay to Mrs. H. S. Cox, $3,000.00, three thousand dollars, with interest at six per cent payable annually.
                    "MRS. GERTRUDE WHITLOW,
                    "W. R. WHITLOW,"

was in the possession of the payee, Mrs. H. S. Cox, and that she gave the note to her niece, Mrs. Gertrule Whitlow, and promised to deliver it to Mrs. Whitlow, and instructed Mrs. Whitlow, in case she did not deliver the note to her in her lifetime, to take possession of it and destroy it herself, it being the theory of the pleader that the note had been given by the payee to the payor in such way and manner as to constitute a gift *inter vivos.* The pleading, however, showed the note had not been delivered by the payee to the payor. Later the petition was amended, the averments, in substance, being that the person named as payee in the note had given to the person named as payor in the note $3,000.00 with which to build a home in a village in Warren county, and that after the money had been delivered and used in the construction of the home and the gift fully consummated, the giver asked Mrs. Whitlow to execute to her a note for the amount, which she did, the purpose being to secure

to Mrs. Cox interest at six per cent on the $3,000.00, with no purpose on her part to collect the principal, $3,000.00. The answer and its amendments traversed the averments of the petition as amended, thus making up the issues. Evidence was taken and the cause submitted. The court rendered judgment in part reading:

"The note for $3,000.00 executed by plaintiffs to Benna W. Cox, and mentioned in the petition herein, was a gift to plaintiffs from said Benna W. Cox to the extent of the principal of said note and to said extent said note is cancelled and held for naught, and the counterclaim of the defendant, John R. Downing, executor, insofar as it seeks to recover judgment for the principal of said note, is dismissed; it is further adjudged, however, that the defendant, John R. Downing, as executor under the will of said Benna H. Cox, recover of plaintiffs, Gertrude H. Whitlow and husband, W. R. Whitlow, on said counterclaim annual interest on said note as follows: the sum of $180.00, with interest thereon at the rate of six per cent per annum from December 16, 1914, until paid, and six per cent interest on said $3,000.00 from the 15th day of December, 1915, until paid."

It is from this judgment that the executor appeals. Appellant contends that there was no gift of the note as claimed by appellees, and, further, that the facts proven in evidence did not constitute a gift *inter vivos;* and further contends that one who retains a note in his possession but undertakes orally to forgive the principal thereof, and prepares to keep the note solely for the purpose of reserving interest to himself, in fact retains both the principal and interest to himself. Appellant further contends that there was a valuable consideration for the note and that the judgment of the lower court is erroneous.

For appellees it is contended that the gift of the $3,-000.00 in controversy, according to the undisputed testimony, was a fully consummated gift *inter vivos,* and the note for the amount was executed after the gift was consummated and merely for the purpose of attempting to secure to testatrix the interest on the money; that the $3,000.00 in controversy having been given to appellees, and used by them in the construction of a home prior to to the execution of said note, and said gift being irrevoc-

able, the note was without consideration and appellees are not liable for interest thereon.

The evidence offered by appellee to prove the gift is as follows:

By W. R. Whitlow:

"11. When were you married? A. 1911, in June.

"12. After your marriage, I will get you to state whether or not at one time you lived in Warren county, and if so, at what point? A. Near Oakland.

"13. How long did you live in Oakland? A. We lived at Oakland from about 1911 until 1917.

"15. State whether or not whilst you were there you built a home, you and your wife? A. We did.

"16. About what did it cost, Mr. Whitlow? A. About $3,500.00.

"17. When did you begin building this home? A. The spring of 1912. . . .

"24. I will get you to state, Mr. Whitlow, whether or not just prior to or during the construction of this home at Oakland, you received a portion of this or you received this three thousand dollars from Mrs. Cox? A. During the construction, in different sums."

The testimony of Mrs. J. A. Smith along the line is as follows:

"11. I will get you to state whether or not you ever had any conversation with her relatives to her niece, Gertrude Horn, now Mrs. Gertrude Whitlow? A. Yes, a number of times.

"12. State whether or not she ever made any statement to you, relative to her disposing of her property, and if so, what she expected to do with it. A. Well, a number of times she told me that she expected to leave everything she had to Gertrude.

"13. State whether or not she ever stated to you, at any time, that she had made a gift to her of any part of her property? A. Well, last March, I think, a year ago, about the time that Mr. Whitlow sold his place, she told me that Mr. Whitlow had sold his place and that she had given Gertrude three

thousand dollars, and that she wanted her to take that three thousand dollars and put it out on interest.

"14. State whether or not on any other occasion she mentioned the fact that she had given Gertrude any money; if so, what did she say, as near as you can recall? A. Well, she made about the same remark last October when she came here to sell the property. . . .

"16. State about what she did say on that occasion? A. Well, she said she had given Gertrude three thousand dollars on her home.

Also the following from the testimony of Davis T. McElroy:

"11. State whether or not you visited Mrs. Cox in Louisville while she was at the infirmary, prior to her death? A. Yes, sir.

"12. About how long before her death did you make this visit to her? A. Four or five days, I presume.

"19. State whether or not whilst you were there, Mrs. Cox had anything to say relative to Mrs. Whitlow or whether or not she had given her any property or expected to; if so, state what she said? A. She stated, as she had stated before to me, that she had given her three thousand dollars on a home or a house that they were building down there at Oakland?

"21. You say, 'As she had stated before,' where and when was that? A. That was going down on the train, possibly a year and a half or two years prior to this."

Also the following from the testimony of Miss Worswick:

"8. State whether or not you knew Mrs. Benna Cox, or Mrs. H. S. Cox? A. I did.

"11. State whether or not on that occasion you heard any conversation in which Mrs. Cox was discussing Mrs. Whitlow, and what she expected to do or had done for her, relative to some of her property? A. Yes, sir.

"12. Please state as near as you can now recall, the substance of it? A. Well, she said she had let Gertrude have three thousand dollars, as I under-

stand it, to build a home or a house at Oakland and that she had then given it to Gertrude. She had two conversations with Mr. Russell and in the last one mentioned having given this three thousand dollars to Gertrude and spoke of wanting to adopt her; that she wanted Gertrude to have everything she had, as she had been very kind and good to her; in fact, had been just like a daughter to her and she wanted her to have everything she had.''

L. S. Pence also testified to the following facts:

"11. State whether or not on one occasion you had a talk with her in which she made any statement to you about having taken a note from Mrs. Whitlow and her husband and why she took the note and what was her reason for it? A. She told me on one occasion that her attorney had advised her to do that.

"12. To secure to herself what? A. The income or the interest, one or the other, I forgot what term she used, but, anyway, that her attorney had advised her to take a note to secure herself the income or the interest. She said she might need that to take care of her.

"By the Court: Which, the income or the principal or the interest? A. The income or the interest. She wanted it to protect herself, but she said she had given the money to the girl.

"13. Did she in that talk, or any talk you had with her say she had given her that three thousand dollars or money to go in her home? A. I don't know about the words 'three thousand dollars,' she said money. I think she used the words 'dwelling house or in the construction of a dwelling house' down about—Bowling Green some place, I don't recollect about that.''

There were some other scraps of evidence of about the same import, one being to the effect that the testatrix had made up a list of her notes and bonds shortly before death and did not include the one against appellee, Mrs. Whitlow.

For appellant it was shown that the testatrix had directed her advisor, now executor, concerning the $3,000.00 note signed by Mrs. Whitlow, and further that on November 11, 1922, she sent her advisor a letter in

which she said she was enclosing the note and certain other papers. The executor testified that the letter was in the handwriting of Mrs. Cox; that he received it through the mail and that there was enclosed in it the note of Mrs. Whitlow now in controversy; that he had been instructed by the testatrix to put the note with her other papers of similar nature then in his possession, and that he did so.

Appellees, through brief of counsel, practically admit that the evidence is not sufficient to sustain a gift *inter vivos*, which is defined as follows:

> "A gift *inter vivos* is a contract which takes place by the mutual consent of the giver who divests himself of the thing given in order to transmit the title to it to the donee gratuitously, and the donee who accepts and acquires the legal title to it. It operates, if at all, in the donor's lifetime, immediately, and irrevocably; it is a gift executed; and no further act of parties, no contingency of death or otherwise, is needed to give it effect." 20 Cyc. 1192.

The same text on page 1193 says:

> "To constitute a valid gift *inter vivos* the purpose of the donor to make the gift must be clearly and satisfactorily established, and the gift must be complete by actual, constructive, or symbolical delivery, without power of revocation."

In discussing the characteristics of a gift *inter vivos* in the case of Foxworthy v. Adams, 136 Ky. 403, we said:

> "We next come to the consideration of the Abell note. Did the assignment and delivery of the note constitute a valid gift *inter vivos?* The rule is that, to constitute a valid gift *inter vivos*, there must be a gratuitous and absolute transfer of the property from the donor to the donee, taking effect immediately and fully executed by a delivery of the property by the donor and acceptance thereof by the donee. Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect; thus a gift of property to take effect after the donor's death, the donor in the meantime retaining control and dominion of the property, can not be sustained. The delivery must be absolute. All gifts that are not to take effect at once are void."

It is readily perceived that the facts of this case do not bring it within the rule governing gifts *inter vivos*, for the gift was not fully executed by the delivery of the note by the donor and acceptance thereof by the donee. The gift, if there were one, related rather to the future. We may, therefore, dismiss appellees' contention that the note passed under the rule governing gifts *inter vivos*.

The only other inquiry which we need prosecute is as to whether the $3,000.00 which is represented by the note, if it was so represented, was given by Mrs. Cox to Mrs. Whitlow and her husband, or to either of them, before the execution of the note, as an absolute gift, and, was the gift fully consummated before the note was executed? It is insisted by appellees, through counsel, that Mrs. Cox had given to them absolutely and without expectation of repayment, reward or return, the full $3,000.00 long before the note was executed, and that at the time of the gift Mrs. Cox did not ask or expect a note from appellees, and appellees did not expect or intend to execute a note to Mrs. Cox for the money; that the money was an absolute gift with no conditions, and the note, an afterthought on the part of Mrs. Cox, was, therefore, without consideration. If it be true that the $3,000.00 was given by Mrs. Cox to Mrs. Whitlow and her husband, or either of them, without expectation of repayment or other reward, then the gift was an absolute one and the note was without consideration if it were executed after the money was given by Mrs. Cox to Mrs. Whitlow. It is insisted by appellant, however, that the evidence proves that the money was furnished at the time the note was given; that the evidence for appellees proves that the money was furnished at the time the note bears date, and that the two incidents coincide in the matter of time. If this be true, then, of course, the note was given for a valuable consideration, and appellees are not entitled to a cancellation of the note or to judgment acquitting them of responsibility on the note. A strong consideration tending to show that Mrs. Cox regarded the note as part of the assets of her estate is the letter written by her to her nephew, John Downing, whom she had already named as executor in her will, in which letter she enclosed the note in litigation, with instructions to place it with her other papers of similar nature. The executor also testified he had conversed with Mrs. Cox concerning the note and had received instructions which

amounted to a direction to collect the note. Moreover, the note was found in the hands of the executor among other notes due the estate of Mrs. Cox, after her death. It is admitted by appellees that the note was genuine; that it bears their correct signatures, and, further, that they received from Mrs. Cox about the time of the date of the note the sum of $3,000.00. The presumption is, in the absence of proof to the contrary, that the note found in the possession of the payee has not been paid, but is a subsisting obligation.

> "Although it may not be true that the law now presumes against a gift, except under particular circumstances, it certainly does not presume in its favor, but requires proof. The mere possession of a chattel unaccompanied by proof of its delivery by the donor to the donee, raises no presumption of a gift. Ordinarily an unexplained payment of money will be presumed to have been made in payment of a debt, or as a loan, rather than as a gift." 28 C. J. 669.

It takes some evidence of probative value to overcome this presumption. The burden was upon appellees, signers of the note, to overcome this presumption. The evidence introduced by appellant, executor, appears to preponderate on the issue of intention of the payee; and this, added to the presumption raised by the finding of the note in the possession of the payee and her executor, appears to greatly outweigh that introduced by appellees upon the same subject. We think, therefore, that the finding of the chancellor is against the weight of the evidence. In such cases our rule requires us to reverse the judgment. Manifestly if the note was given, as contended by appellant, at the time the money was furnished by Mrs. Cox to Mrs. Whitlow for the purpose of erecting the house in Warren county, it formed a sufficient consideration to support the contract and is enforceable. On the record as presented the chancellor should have dismissed appellees' petition as amended. The judgment is reversed, with directions to enter a judgment in conformity to this opinion.

Judgment reversed.