## Combs v. Roark's Administrator.

(Decided November 4, 1927.)

## Appeal from Perry Circuit Court.

1. Executors and Administrators.—Steps required by Civil Code of Practice, section 180 et seq., as to claim and delivery of personal property, are not necessary in order that administrator may sue to recover possession of decedent's specific property.

2. Gifts.—The burden of establishing a gift either causa mortis or inter vivos rests on party claiming it.

3. Witnesses.—On issue whether deceased mother gave daughter certificates of time deposit, evidence of disinterested persons present at time mother wrote her name on certificates and said she wanted to sign them over to daughter was properly admitted.

4. Witnesses.—Daughter claiming certificates of time deposit as gift from deceased mother was not competent witness to testify that she received certificates from mother, had possessed them ever since, and kept them in mining company's safe, such testimony, in connection with other evidence, being of a "transaction" with deceased, within Civil Code of Practice, sec. 606, subsec. 2, and inadmissible.

5. Gifts.—To establish a "gift," which is a parting by owner with his property without pecuniary consideration, donor must be competent, and intend to make it, donee capable of taking, gift must be complete, be accepted, must be immediately effective, gratuitous, and, if gift inter vivos, must be irrevocable.

6. Gifts.—Law scrutinizes transaction claimed to constitute gift very closely.

7. Gifts.—Testimony of witness, witnessing transaction, that mother, when she indorsed certificates of time deposit, said she wanted to sign certificates over to daughter, held not evidence of gift of them to her daughter.

8. Gifts.—To establish a gift inter vivos, it is essential that delivery be shown.

9. Gifts.—In suit by administrator to recover possession of certificates of time deposit claimed by defendant as gift from her mother, directing verdict against defendant was proper, where there was no competent evidence that certificates were ever delivered to her.

F. J. EVERSOLE, JESSE MORGAN and J. T. BOWLING for appellant.

J. W. CRAFT, W. H. MILLER, H. C. FAULKNER and W. E. FAULKNER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

This is an appeal from a directed verdict in favor of the appellee. This is the second appeal of this case. See

206 Ky. 454, 267 S. W. 210. Mrs. Roark suffered a paralytic stroke on March 6, 1921, from which she partially recovered, but on June 1st she suffered a second stroke, from which she died on June 10th. Her husband, Dr. F. C. Roark, qualified as her administrator, and he and her eight children were the distributees of her estate. Dr. Roark sued Mae Roark Combs to recover of her possession of five certificates of time deposit, the face value of which aggregated $5,480. Mrs. Combs demurred to this petition. Her demurrer was overruled. That action was approved on the former appeal, but, as she is raising the question again we will say that this petition was a good petition to recover the possession of specific personal property. The plaintiff did not take the steps required by section 180 et seq. of the Civil Code, to secure an immediate delivery of the property, but such steps are not necessary in order to maintain the action. See Adams v. Craycroft, 10 Ky. Op. 910. By her pleadings, Mrs. Combs merely denied the allegations of the petition, and averred that she was the owner of these certificates. There is nothing in her pleading to show how she became the owner of these certificates, but we gather from the record that she claimed these certificates were given her by her mother on April 29, 1921. Whether this gift was a gift causa mortis or a gift inter vivos is not pleaded, and cannot be determined from the meager evidence in the case, but it will not be necessary for us to do so, for, in either event, the burden of establishing this gift rested on Mrs. Combs. See 28 C. J. pp. 669, 703; Buckel et al. v. Smith's Adm'r, 82 S. W. 235, 26 Ky. Law Rep. 494; Endicott v. Stump (Ky.) 128 S. W. 76.

She offered as a witness in her behalf one J. C. White, who testified he was present at the office of the Columbus Mining Company in Christopher in April, 1921, when Mrs. Combs wrote the name of Polly Ann Roark on these certificates, and that he saw Polly Ann Roark sign them by making her mark, and he said this in his testimony:

"Mrs. Roark asked me to witness it, said she wanted to sign them over to Mae, wanted me to come in and witness it, and I went in and witnessed her mark."

Mrs. Combs showed by another witness, J. C. Mooney, that he saw Mrs. Roark and Mrs. Combs and

White at the Columbus Mining Company, and saw them signing some papers. Practically the same thing was testified to by Jeff Bryant and William Russell. Dr. Roark objected to this evidence. These people had no interest in the matter, and their evidence was properly admitted. Mrs. Combs then offered herself as a witness, and testified that she received these certificates at the Columbus Mining Company's plant on April 29, 1921, and had had possession of them all the time since then, and kept them in the safe at the Columbus Mining Company. Dr. Roark's motion to exclude this evidence about getting and having possession of these certificates from the jury was overruled. He then moved the court to instruct the jury to find for him, and that motion was sustained; proper exceptions being reserved in each instance. Upon these two rulings this case depends. We will consider first the action of the court in refusing to exclude this evidence of Mrs. Combs. The basis of Dr. Roark's objection to this evidence about getting and having possession of these certificates is that, when it is taken in connection with the evidence of other witnesses, it is testimony concerning a transaction with Mrs. Roark, who is now dead. In our opinion upon the former appeal, we went into this question of evidence very extensively, but there are now some questions presented that seem not to have been specifically covered even by that extensive opinion.

As a gift is a parting by the owner with his property without pecuniary consideration, the law scrutinizes such transactions very closely, and to establish such a gift there must be a donor competent to make it, and an intention on his part to make it; a donee capable of taking a gift; the gift must be complete with nothing left undone; the property must be delivered by the donor, must be accepted by the donee, must go into immediate and absolute effect, must be gratuitous, and, in case of gifts inter vivos, must be irrevocable. If we look again at what the witness White said, we will see that his evidence covers none of these things. His statement that Mrs. Roark said she wanted to sign them over to Mae does not necessarily mean that she wanted to give them to Mae. There are many reasons for which she may have wanted to sign them over to Mae. She may have wanted Mae to get them converted into cash for her; she may have wanted the deposit changed from time deposit

to a general checking account; she may have intended to establish some sort of an agency or trust. There are many purposes which she may have had to sign them to Mae, without having in mind the purpose of giving them to Mae. Therefore the attorneys for Mrs. Combs regarded it as important to show that Mae has had possession of these certificates since April, 1921, and, if that could be shown by some witness other than Mrs. Combs herself, it would be right important evidence for her, but Mrs. Combs is an interested witness, and, when she testifies for herself to having had possession of these papers since the meeting at the Columbus Mining Company's office, testified to by White, it is equivalent to a statement on her part that they were then delivered to her, then given to her, and that under such gift and delivery they then became her property. She cannot testify for herself about a transaction with her mother, now deceased. See former appeal of this case, cited supra, and our next inquiry is, was this a transaction with the deceased, and, in testifying as she did, was Mrs. Combs testifying about such transaction? The word "transaction," as used in our Code, subsection 2 of section 606, is very inclusive. See North American Accident Ins. Co. v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297, and cases cited there. As Mrs. Combs cannot testify to a transaction with her mother, who is now dead, our next inquiry is, was this evidence about possession evidence concerning a transaction with her mother?

In 4 Jones on Evidence, p. 784, this is quoted with approval from Clifton v. Meuser, 79 Kan. 655, 100 P. 645:

"A plaintiff in an action against an administrator may ordinarily testify (as) to his own conduct. But whenever his conduct is of such a character that in describing what he did himself he necessarily attributes to the decedent some act or attitude with respect thereto the incident which is the subject of the testimony is shown to relate to a transaction participated in by the two parties, which must be shown, if at all, by other witnesses."

"Nor may a witness testify indirectly to that of which he is incompetent to testify directly." Jones on evidence Vol. 4, p. 791.

In Underhill on Evidence, p. 442, we find this:

"The prohibition of the introduction of evidence of a personal transaction with deceased should

be construed, not only to prevent the introduction of direct proof of such transaction, but to prevent its proof by indirection as well.''

In the case of Owens v. Owens, 14 W. Va. 88, a sister was endeavoring to collect from the estate of her brother a claim asserted for services rendered as his housekeeper. She had been allowed to testify that she did for her brother his cooking, washing, ironing, spinning, weaving, sewing, marketing, etc., which was held to be erroneous, as it tended to establish an implied contract on the part of the brother to pay therefor, and in that opinion the court said:

> ''The spirit of the law . . . is not to allow a party to a suit against an executor, administrator, etc., to testify on his own behalf in respect to any transaction, or communicatioin, had directly with the deceased. The temptation to falsehood and concealment in such cases is considered too great, to allow the surviving party to testify in his own behalf. Any other view of this subject . . . would place in great peril the estates of the dead, and would in fact make them an easy prey for the dishonest and unscrupulous.''

In the case of Howard et al. v. Zimpelman (Tex. Sup.) 14 S. W. 59, Howard was dead, and, in an action against his heirs, Zimpelman was endeavoring to establish execution and delivery by Howard of a certain writing, and was permitted to testify he first saw the instrument in the latter part of August, 1877, when he received it from the post office at Austin in an envelope bearing the postmark ''El Paso.'' The Texas court said:

> ''The admission of the evidence was error. The testimony tended to show that Howard transmitted the paper from El Paso to (Zimpelman) by mail for the purpose of giving it effect as a contract by such delivery.''

The real question here is: Does this testimony of Mrs. Combs tend to prove a transaction with her mother? and what it was. If it does so tend, it is inadmissible. If it does not so tend, then she cannot object to its exclusion. The court should have excluded this evidence. The trial court gave as its reason for directing a verdict for plaintiff the failure of Mrs. Combs to establish the de-

livery of these certificates to her. To establish such a gift, it is absolutely essential that delivery be shown, and we are unable to find in this record even a scintilla of evidence that these certificates were delivered. Even this evidence of Mrs. Combs which we have said should have been excluded did not establish delivery. See Downing v. Whitlow et al., 211 Ky. 294, 277 S. W. 262. In 28 C. J., p. 679, we find this:

> "The mere possession of the property by the donee is not sufficient evidence of a gift, for this may be consistent with a mere custody or agency."

In this same volume (page 681) we find this supported by numerous authorities:

> "Gifts first asserted after the death of the donor are regarded with suspicion by the courts, and the rule requiring gifts to be established by clear and convincing evidence is especially applicable in such cases, particularly where a confidential relation existed between the parties, some of the decisions holding in such cases that the evidence must be as clear as that required to sustain a gift causa mortis. Mere preponderance of evidence will not suffice. The evidence must be so cogent, it has been said, as to leave no reasonable doubt in the mind of an unbiased person that the demand is a proper one."

To make valid a gift the donee must establish by evidence every element necessary to that validity, and one of the most important elements is delivery. In Re Gilman, 92 Misc. Rep. 140, 156 N. Y. S. 169, a son claimed that his father had given him 100 shares of certain stock. He established by two disinterested witnesses that his father had repeatedly said "he had given this stock to his son." After the death of his father, the son qualified as his executor, and had these shares transferred to himself. At the time of this transfer he surrendered to the corporation the original certificate upon which there was the usual assignment, and power of attorney, which had been signed in blank by the father. In that opinion the court said:

> "Where a claim against an estate is based upon a personal transaction between the decedent and the claimant, clear and convincing proof is

needed. The presumption with which this inquiry must start is that the decedent, once the owner of the security in question, remained the owner thereof at his death. There is no direct proof as to the delivery of the stock by the father to the son. . . . The only fact which may tend to impair the presumption that the stock was owned by the decedent at death is that he frequently said that he had given it to his son. . . .

"Under the rigor of the rule which requires from the claimant clear and convincing proof in support of his demand, he has not affirmatively established that there was a delivery to him with the intent to effect a gift."

Of all the essential elements of a gift, the delivery is perhaps the most important, for, though the donor may have clearly announced his intention to make the gift, and the donee may have declared his willingness to accept it, and have given much evidence of his gratitude, yet, unless the donor makes either an actual or a symbolic delivery, the gift is not complete, and, as no pecuniary consideration has passed, if the donor should refuse to make delivery, the donee would be powerless to compel him to do so. In the case before us, there was no competent evidence to establish either the giving, the delivery, or Mrs. Combs' possession of the certificates during her mother's lifetime. Hence the court did not err in directing the jury to find against her.

Another feature of the case which certainly looks bad for her is her claim that these certificates were given her in April, 1921, when the record shows that one of them is dated May 15, 1921.

The judgment is affirmed.