## Ford et al. v. Ford's Executor.

Decided March 28, 1930.)

674

FINN & SIMS and LAWRENCE B. FINN for appellants.

C. E. EVANS and W. R. PEEBLES for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

M. B. Ford, Jr., has prosecuted an appeal from a judgment disallowing his defense to a note. The action was instituted by the executor of Mrs. M. B. Ford, Sr., to recover a balance claimed to be due upon the note and to enforce a vendor's lien. It appears that the note was executed to Mrs. Ford as a part of the purchase price of her dower which she conveyed to M. B. Ford, Jr. The note recited that it was secured by a lien on land, but the deed contained no such provision. The petition alleged that by fraud or mistake the reservation of a lien was omitted from the deed. The obvious purpose of that allegation was to secure a contract lien on the land itself, since the vendor's lien for purchase money extended only to the particular estate or interest conveyed and for which the price was to be paid. 27 R. C. L. sec. 315, p. 573; Rogers Development Co. v. Southern California Real Estate Co., 159 Cal. 735, 115 P. 934, 35 L. R. A. (N. S.) 543. To that extent, as against the vendee, or volunteers under him, the lien was good, although the deed was silent in that regard. Ky. Stats., sec. 2358; Ross v. Adams, 13 Bush 370; Tate v. Hawkins, 81 Ky. 577, 50 Am. Rep. 181; Brown v. Ferrell, 83 Ky. 417; Doty v. Deposit Building & Loan Association, 103 Ky. 710, 46 S. W. 219, 47 S. W. 433, 20 Ky. Law Rep. 625, 43 L. R. A. 551, 554; White v. Taylor, 107 Ky. 20, 52 S. W. 820, 21 Ky. Law Rep. 602; Starbird v. Blair, 227 Ky. 258, 12 S. W. (2d) 693. The vendor's lien is a creature of equity and rests upon the principle that one who gets the estate of another ought not in conscience to be allowed to keep it without paying the consideration. Fisher v. Shropshire, 147 U. S. 133, 13 S. Ct. 201, 37 L. Ed. 109. Inasmuch as Mrs. Ford conveyed to M. B. Ford, Jr., merely a life estate in one-third of the real estate, her lien for purchase money, in the absence of a contract enlarging it, would extend only to the life estate which she had conveyed and which terminated at her death. The answer of the defendant admitted execution of the note,

but averred that the true contract between the parties was not expressed therein, and that by mistake or oversight the draftsman omitted the actual terms of the contract. The real contract was averred to be a sale of the widow's dower interest in certain land for which a note was to be given, drawing interest, but to be discharged at the death of the payee. Reformation of the contract to conform to the real understanding of the parties was sought.

Plaintiff's case was rested upon the written obligation, absolute in its terms, and which contained a promise to pay in one, three, and five years after date the sum of $2,666.66, with interest at 6 per cent. per annum. It was dated December 26, 1917, and, so far as appears, no effort was ever made by the payee to collect the principal. Many of the credits on the note were made by Mrs. Ford without the knowledge of the maker of the note and consisted of indorsements from time to time representing the amounts she thought should be paid for board. Some of the background of the case is necessary to be understood in approaching a consideration of the facts. M. B. Ford, Sr., first married Laura Cooksey. They have two living children, Sewell H. Ford and M. B. Ford, Jr. Miss Mollie Cooksey was a younger sister of the first Mrs. Ford, made her home with her, and was employed for many years in the store of M. B. Ford, Sr. After the death of his first wife M. B. Ford, Sr., married Miss Mollie Cooksey. In November, 1917, M. B. Ford, Sr., died, leaving a small personal estate and some real estate. The only persons interested in his property were his widow and two sons. The widow was the aunt and stepmother of the two sons, and had lived in their father's home throughout the lives of the sons. They desired to make a settlement of their respective rights in the estate without the intervention of legal proceedings and met for that purpose. They had three unimproved lots of approximately $800 each in value, but from which no income was derived. One of the lots was conveyed in fee to the widow, and one to each of the boys. The other land was divided between the two boys, and they arranged to purchase the dower interest of their stepmother therein.

It was agreed on all sides that the value of this other land was about $10,000. The dower interest was a life estate in one-third thereof. Section 2132, Ky. Stats. The widow was sixty-two years of age, and

according to the annuity tables, the cash value of her life right was slightly less than $600. The life right did not exist in the entire $10,000, but only in one-third thereof. If a settlement had been made strictly according to the rights of the parties, the widow would have been given the value of her dower in the land, including a life estate in one of the three vacant lots, $750 in cash, or its equivalent (section 1403, Ky. Stats.), and one-half of the surplus personalty (section 2132, Ky. Stats.) The residue belonged to the sons of M. B. Ford, Sr. The personal estate consisted of the household goods, the value of which is not shown, and some accounts which were worth less than $1,000. If the widow had elected to take a homestead right, she would have had a right of occupancy of the home, not to exceed $1,000 in value. Section 1707, Ky. Stats. Instead of so making the settlement, one of the vacant lots was deeded in fee to the widow. She was given all of the household goods and was appointed personal representative, with the right, of course, to collect the accounts. She collected only small sums, and, when she did so, disbursed it approximately one-third to each of the boys and one-third to herself. This was done, however, upon her own motion, and does not appear to have been pursuant to any express agreement, except as one may be inferred from her acts. She was furnished a home by the sons which she enjoyed except when visiting elsewhere. No charge was made for her board, but she voluntarily made some small payments to the sons, or their wives, on that account, and credited on the notes regularly what she considered to be due her nephews. The boys had executed their notes to her aggregating $3,333.33, representing exactly one-third of the value of the land in which she had a dower right. On account of the difference in value of the lands allotted to the boys, M. B. Ford, Jr., gave his note for $2,666.66, and Sewell H. Ford gave his note for $666.66.

There is positive testimony by Sewell H. Ford to the effect that the agreement was for the notes to be held by Mrs. Ford in lieu of the land, and in the same way. That is to say she was to have only a life estate therein, and at her death the notes were to become void. The testimony is inherently reasonable and is fortified by the circumstances. It is difficult to believe that an absolute payment of $3,333.33 would be made for land, the actual value of which was very much less. It is not contended

that a gift was contemplated, but merely a settlement of relative rights. Moreover, the boys furnished a home for the widow, and the circumstances tend to indicate that the notes were to stand in place of the land, and with like interest therein. On the other hand, the plaintiff relies upon the written obligation the fact that the vacant lot was deeded to Mrs. Ford in fee, that she made credits on the note, thus paying her board, that when she collected the accounts she distributed to each of the boys and kept for herself approximately one-third of the amount, when she was entitled to one-half, that she waived her widow's claim to $750, and declared to her sister, Sallie E. Ford, that she took a child's part in her husband's estate, meaning that she and each of the boys took one-third thereof. But difficulties are encountered in sustaining the position. They did not actually carry out an agreement for precisely one-third of the estate to each of the three. The note itself is in peculiar form, unsuited to express the particular transaction, and lends likelihood to Sewell H. Ford's testimony that he copied from an old note and did not formulate it in accordance with the contract. Furthemore, the note was payable in one, three, and five years, and, although past due, no effort was ever made by Mrs. Ford to collect it. Her surrender of the statutory exemption was more than compensated by the household goods and vacant lot given to her. She was able to realize cash on the lot, and the difference between her half of the accounts and the third she took was insignificant. It appears also that Mrs. Ford ran an account at M. B. Ford Jr.'s store, where she purchased at her pleasure without making any payments.

Both parties refer to the will of Mrs. M. B. Ford, Sr., as supporting their respective contentions. It was a holographic will, dated November 22, 1924. When it was written, the three installments on the notes were due, The will referred specifically to every item of property owned by Mrs. Ford, but no reference whatever was made to the notes of the Ford boys. She made numerous specific bequests. The residuary clause was limited to "money and bonds" which were to be divided among her nephews and sister, one-half to the sister and the other half to the two nephews equally. It is argued on one side that the phrase "money and bonds" included the notes, whilst on the other it is insisted that she had money and government bonds and referred to them.

Certainly it is not inconsistent with her will to hold that Mrs. Ford did not intend to collect the note or dispose of its proceeds. She knew the difference in the character of the items of her property and aptly described each thing disposed of by the will. In any event, the will is not an obstacle in the pathway of the appellant in maintaining the defense interposed by him. Balancing all the considerations, and contemplating the situation of the parties, we are constrained to the conclusion that it was not the intention of M. B. Ford, Jr., to give his stepmother the large sum of money indicated by the note. It was executed to represent the widow's dower interest in the property, and was not intended by her to be collected. We think the contract should be reformed accordingly.

But it is insisted that a written agreement may not be reformed for mistake unless the testimony is clear, convincing, and satisfactory. Ison v. Sanders, 163 Ky. 605, 174 S. W. 505; Mattingly v. Speak, 4 Bush 316; Whitt v. Whitt, 145 Ky. 367, 140 S. W. 570; Farar v. Eli, 195 Ky. 30, 241 S. W. 326; Royer Wheel Co. v. Miller, 50 S. W. 62, 20 Ky. Law Rep. 1831. In Insurance Company of North America v. Evans, 229 Ky. 613, 17 S. W. (2d) 711, we recently reviewed the relevant authorities and deduced the true rule to be that a contract will be reformed in equity, if the evidence is satisfactory and convincing that a mutual mistake has been made and relief is necessary to prevent injustice. We find the evidence in this case to be satisfactory and convincing, and, by granting reformation, we will carry out the obvious intent of the parties, whereas to deny relief would result in injustice.

It is said, moreover, that the testimony of Sewell H. Ford is incompetent and not to be considered in this case. Civil Code of Practice, sec. 606, subsec. 2; Apperson v. Exchange Bank, 10 S. W. 801, 10 Ky. Law Rep. 943; Taul v. Brickey, 187 Ky. 381, 219 S. W. 430. On the other hand, appellant urges that the testimony is competent, since Sewell H. Ford is not pecuniarily concerned in defeating a recovery, but is interested on the other side because he, as a residuary legatee under the will, would profit by collecting the note to the extent of one-fourth thereof. Dunbar v. Meadows, 165 Ky. 275, 176 S. W. 1167; Beach v. Cummins, 18 S. W. 360, 13 Ky. Law Rep. 881; Gernhert v. Straeffer, 172 Ky. 823, 189 S. W. 1141. It is unnecessary, however, for us to deter-

mine that question. Section 587 of the Civil Code of Practice provides that "exceptions to the competency of the witness, or to the competency or relevancy of the testimony may be made before or during the trial." Section 586 requires that "exceptions to depositions shall be in writing, specifying the grounds of objection, filed with the papers of the case, and noted on the record." It is the established rule that exceptions to depositions may not be taken for the first time in this court. They must be addressed, in the first instance, to the trial court and an exception taken to his ruling. If such written exceptions are not filed and a ruling thereon obtained in the trial court, the point will be deemed waived, and this court will consider the case as if no question had been made of the competency of the witness, or the admissibility of his testimony. Hancock v. Chapman, 170 Ky. 99, 185 S. W. 813; Keeton v. Mahan, 177 Ky. 85, 197 S. W. 519. That requirement of appellate practice is not obviated by mere objection to the testimony at the time the deposition is taken. Roberson v. Roberson, 183 Ky. 45, 208 S. W. 19; Johnson v. Johnson, 184 Ky. 131, 211 S. W. 557. No exceptions were filed to the deposition of Sewell H. Ford, and the trial court made no ruling on the subject. It must be considered, therefore, as competent in all respects and for all purposes.

It is insisted finally that the conclusion of the chancellor on the facts was against the right of reformation of the contract, and that his decision on conflicting evidence will not be revised. It is true we repose great confidence in the finding of facts by the chancellor, and, in case of mere doubt as to the truth, his decision is not disturbed. Insurance Co. v. Evans, 229 Ky. 613, 17 S. W. (2d) 711; Walker v. Walker, 228 Ky. 357, 15 S. W. (2d) 298; Hagan v. Hurst, 228 Ky. 645, 15 S. W. (2d) 446; Long v. Howard, 229 Ky. 369, 17 S. W. (2d) 207. In equity cases, however, this court must read the record for itself, and, if the finding of the trial court fails to accord with the evidence as construed by it, and its own reading of the record results in a clear conviction how the case should be decided, it is its duty and within its province to direct the judgment that accords with its view of the rights of the parties. Lewis v. Shell, 205 Ky. 624, 266 S. W. 254; Downing v. Whitlow, 211 Ky. 294, 277 S. W. 262; Walker v. Walker, 228 Ky. 357, 15 S. W.

(2d) 298; Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285; Katz v. Earl & John Scott, 229 Ky. 738, 17 S. W. (2d) 1024.

The judgment is reversed, with directions to enter a judgment conforming to this opinion.