## Calloway et al. v. Hite's Ex'r et al.

(Decided June 19, 1936.)

OSCAR M. SMITH for appellants.

WM. R. SPECK and J. WILBUR WADE, and I. G. MASON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Sim Calloway, a colored man, and his family had resided in Logan county, Ky., for many years. Henry Hite, colored, resided in the home of the father and mother of Sim, and after their death he spent a great deal of his time at the home of Sim and family. Hite was "a Union soldier" during the Civil War of 1861-1865. After his discharge from the army he was paid by the United States government a pension of $70 a month for many years, and until his death. He acquired title by deed to real estate in Warren county and a small tract of land in Logan county. He was "a wanderer," and made his home a portion of the time in Warren county, Logan county, and elsewhere. For some time next before his death, and at his death, he resided at the

home of a niece in Warren county. While residing there, in 1932, he made and published his last will and testament, which was probated by the county court of Warren county. Cain Gibson was nominated executor of his will, and on April 25, 1932, qualified by taking the oath of office and executing bond for the faithful performance of his duties. The will devised to Blanche Moore and Henry Burch an undivided half interest in a tract of land situated in Logan county, the deed to which was in the name of Sim Calloway. It devised to them other property which is not now involved. After he qualified as executor, Cain Gibson took possession of the papers of Henry Hite, and among them he found four checks: One, drawn by Henry Hite on the First National Bank of Adairville, Ky., dated March 26, 1930, payable to the order of Sim Calloway for $525.58 . It was indorsed by Sim Calloway. It had written on its face, to the left of the signature of Henry Hite, the words "for one-half payment on first land note." Another, drawn by Henry Hite on the same bank, dated October 3, 1930, payable to the order of R. L. Miles, agent for Long, for $549.23 and written on it the words "on land note of Sim Calloway." It was indorsed by Miles, agent for Long. A third check drawn by Henry Hite on the same bank, dated April 8, 1931, payable to the order of Miles, agent, for $230, was indorsed, "R. L. Miles, Agent." A fourth check drawn by Henry Hite on the same bank, dated October 7, 1931, payable to the order of Miles, agent, for $330.68, "for credit on land note,—Mrs. Long," and indorsed by Miles, as agent. Soon after finding these checks, Cain Gibson and Granville Bryant, in Kuykendall's truck, went to the home of Sim Calloway in Logan county, for the purpose of taking possession of it, at Calloway's, and bringing to Warren county, the personal property of Henry Hite. On that occasion, Calloway stated to them that he and Hite each owned one-half interest in the tract of land in Logan county, on which he resided; Henry Hite had paid his part of the consideration for it; the deed to which was in his (Calloway's) name, and he had a contract signed by him and Henry Hite, showing Hite's payment for his interest in the land. Sim Calloway attended the burial of Henry Hite in Warren county, and while there stated to witnesses that he and Henry Hite owned the farm on which he resided in Logan county, and Hite had paid his half of the purchase money.

This action was instituted against Sim Calloway and wife, Lucy Calloway, asserting Henry Hite was the owner of one-half interest in the farm on which Sim Calloway resided at Hite's death. The petition charged. that the deed to the land was in Sim Calloway, and that. he had executed and delivered to Hite a contract evidencing Hite's ownership of one-half of the land and. the payment of one-half of the agreed purchase price. Calloway's deed to it was executed and delivered by the Long heirs. It authorized R. L. Miles, as agent for the. Long heirs, to collect Calloway's notes executed and delivered by him as a part of the agreed price of the land. The four checks mentioned above were received by Miles, agent for the Long heirs, in satisfaction of the purchase price to the amount of these checks. Henry Hite and Calloway were present at the time Miles received and accepted the four checks in payment of one-half of the purchase price of the land. The land was. deeded to Calloway on October 4, 1929.

To avoid a judgment on the cause of action stated. in the executor's petition against them, Calloway and. wife pleaded and relied on a gift inter vivos of Hite's. four checks.

Calloway denied that he made to Gibson and Bryant any statements relative to Henry Hite's payment of the checks, or either of them, on the land, or that he had made any statements concerning any contract between him and Henry Hite about the land. He admitted that. one of the checks was made payable to him and that he indorsed and delivered it to Miles as a payment on one of the land notes which he had executed and delivered. for the land, and claimed that Hite merely stated to him, at the time he executed and delivered it, that he wanted to "help him out." He further claimed that he was not present at the time Hite delivered one or more of the other checks to Miles, and that when he discovered Miles had done so, he inquired of Hite why he did it, when he responded he wanted to "help him out." Two sons of Calloway strongly corroborate him. They go further and declared that Hite stated to their father, in. their presence, that he was giving him the sums represented by the checks for what he (Sim Calloway) had. done for him. Miles testified that the only statement Hite made in his presence was that he was "helping Calloway out."

The trial court accepted the executor's version of the transaction and decided that the checks, together with the statements of Calloway, to Gibson, Bryant, and others, established that the sum of the checks was a debt owing by Calloway to Hite at his death, and rendered a personal judgment therefor with interest, against him, and directed a sale of the land to satisfy the same.

Calloway, in his brief, discusses and presents cases bearing on gifts inter vivos. The court's decision on the facts that Calloway was indebted to the estate of Hite, and entitled to enforce a lien on the Logan county land to satisfy the amount of the checks, was the equivalent to adjudging that the same were not a gift inter vivos.

No reason appears in the record for discrediting the testimony of Gibson, Bryant, and others, as to Calloway's statement to them that he and Hite owned the land "fifty-fifty"; Hite had paid for his half of the purchase price, and there was a written contract between them evidencing Hite's right to one-half of the land. The trial court was perfectly justified in accepting the checks and their testimony, as the best evidence of the truth, and in treating Calloway's claim of a gift inter vivos of the checks, as an afterthought evolved to defeat Hite's estate and prevent a recovery of the amount of the checks.

"It is a familiar, fixed rule of this court in equity cases that 'this court must read the record for itself, and, if the finding of the trial court fails to accord with the evidence as construed by it, and its own reading of the record results in a clear conviction how the case should be decided, it is its duty and within its province to direct the judgment that accords with its views of the rights of the parties.' Ford v. Ford's Ex'r, supra [233 Ky. 673, 26 S. W. (2d) 551]; Lewis v. Shell, 205 Ky. 624, 266 S. W. 254; Downing v. Whitlow, 211 Ky. 294, 277 S. W. 262; Walker v. Walker, 228 Ky. 357, 15 S. W. [2d] 298; Turner v. Hammock, 229 Ky. [836] 839, 18 S. W. [2d] 285; Katz v. Scott, 229 Ky. 738, 17 S. W. [2d] 1024." Black v. Noel's Adm'x, 240 Ky. 209, 41 S. W. (2d) 1100, 1102.

Viewing this case with this rule in mind, it is clear the chancellor did not err in his finding of facts, nor in the judgment rendered.

It is therefore affirmed.