RENDERED:  SEPTEMBER 22, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1518-MR

GERALD MCCAHREN
APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 18-CI-01181

MATRIX FINANCIAL SERVICE
CORPORATION; COMMONWEALTH
OF KENTUCKY DEPARTMENT OF
REVENUE DIVISION OF
COLLECTIONS; GARY WAYNE
HUNTER; JAMES H. FRAZIER, III;
SPICEWOOD HOMEOWNERS
ASSOCIATION, INC.; AND UNITED
STATES OF AMERICA INTERNAL
REVENUE SERVICE
APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

ACREE, JUDGE: Appellant, Gerald McCahren, appeals the Fayette Circuit Court's Order granting summary judgment in favor of Appellee, Matrix Financial Services Corporation (Matrix). We affirm.

This is a case of competing claims of lien priority relative to Fayette County real property formerly owned by Gary Hunter. McCahren claims an equitable lien on the Fayette County property dating from July 27, 2011, based on a Contract for Deed by which he sold a separate property to Hunter located in Bourbon County. Matrix claims its lien relative to the Fayette County property is superior to McCahren's lien based on a mortgage filed by its assignor and predecessor-in-interest on October 6, 2016.

This Court is called upon to determine whether summary judgment properly found Matrix's lien is superior to McCahren's. Because we conclude McCahren's equitable lien is limited to the Bourbon County property, the first encumbrance of the Fayette County property McCahren can claim is the judgment lien he filed in Fayette County on July 14, 2017, after Matrix's assigned mortgage was filed. Therefore, we conclude summary judgment was appropriate.

The parties agree there are no genuine issues of material fact, and the appeal can be decided by applying law. In addition to those stated thus far, the material facts are as follows.

Soon after McCahren and Hunter executed the Contract for Deed in 2011, they duly recorded it in the Bourbon County Clerk's Office. Hunter defaulted on the contract and, on November 18, 2015, McCahren filed suit in Bourbon Circuit Court for breach of contract and foreclosure.

On June 21, 2017, McCahren secured a judgment from Bourbon Circuit Court and filed a judgment lien in the Fayette County Clerk's Office on July 14, 2017. No one disputes the judgment lien's effective date. However, McCahren does not base his claim on the judgment lien – it does not precede Matrix's filing.

McCahren argues the Bourbon Circuit Court judgment and lien recognized his pre-existing equitable lien dating back to 2011. With this, we agree. *State Street Bank & Tr. Co. of Boston v. Heck's, Inc.*, 963 S.W.2d 626, 631 (Ky. 1998) ("The court of equity does not create the lien, but only recognizes and enforces it."). He further argues that a combination of factors (including the Bourbon County filing of the Contract for Deed and the Bourbon Circuit Court litigation) should have put Matrix on inquiry notice to discover the existence of that equitable lien. Inquiry notice is typically recognized by courts when evidence, including circumstantial evidence, of which a party is or should be aware would lead a reasonable and prudent person under like circumstances to inquire into the matter and discover the existence of a lien, mortgage, or other encumbrance. *See*

59 C.J.S. *Mortgages* § 293 (Inquiry notice is the knowledge that the law imputes "when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another[.]").

Although McCahren's legal argument, supported by the opinion of a banking expert,[1] is that Matrix was on inquiry notice of the equitable lien, that argument overlooks controlling Kentucky precedent that limits the extent of an equitable lien to the subject real property. *Ford v. Ford's Ex'r*, 26 S.W.2d 551, 552 (Ky. 1930) ("the vendor's lien for purchase money extended only to the particular estate or interest conveyed and for which the price was to be paid").

In *Ford v. Ford's Executor*, a widow sold her dower interest – a life estate – to her stepson for consideration that included a note. The sale was represented by a contract for deed, filed with the county clerk. Upon the widow's passing, her executor tried to collect from the stepson the balance of the note

---

[1] John R. Davis has 33 years' experience in the banking industry and expressed his opinion "from the perspective of a reasonable creditor[.]" In his opinion, "the loan [made by Matrix's predecessor, secured by Hunter's Fayette County property,] should never have been made given the potential and unacceptable risk for nonpayment or recovery, the inconsistency and risk factors found in the request, and in the available [public] record at the time. It is my opinion that the questions raised by a reasonable level of due diligence gave rise to inquiry notice. . . . Whether intentionally or negligently, the lender [Matrix's predecessor] took on excessive risk by making this loan in the face of readily available information regarding the debtor." Assuming an expert opinion that Hunter was not a good credit risk creates an issue of fact whether Matrix was on inquiry notice of the equitable lien, that fact is not a material one in the context of this case, as discussed below.

claiming "a contract lien on the land itself[.]" *Id.* Our predecessor Court of Appeals ruled as follows:

> The vendor's lien is a creature of equity and rests upon the principle that one who gets the estate of another ought not in conscience to be allowed to keep it without paying the consideration. Inasmuch as Mrs. Ford conveyed to M. B. Ford, Jr., merely a life estate in one-third of the real estate, her lien for purchase money, in the absence of a contract enlarging it, would extend only to the life estate which she had conveyed and which terminated at her death.

*Id.* (citation omitted).

It is a rule widely applied that an equitable or vendor's lien extends only to the subject property. As stated in *Corpus Juris Secundum*, "A vendor's lien involves the transfer of an interest in land. A vendor's lien attaches to the real estate which has been sold or conveyed, *and only to that realty*, to the extent of the vendor's estate or interest." 92A C.J.S. *Vendor and Purchaser* § 571 (emphasis added) (footnotes omitted).

In addition to being widely accepted among our sister jurisdictions, it is also a longstanding rule as indicated by the legal encyclopedia *Ford v. Ford's Executor* cites – Ruling Case Law, or R.C.L. – which says the equitable lien arising from the interest conveyed by a contract for deed attaches "only to the equitable interest or estate which was the subject of the sale." 27 R.C.L.[2] § 315, p.

---

[2] R.C.L., or "Ruling Case Law," first published in 1914, is the predecessor publication of *American Jurisprudence*, *i.e.*, *Am. Jur.* Its full title, as shown on the cover of each volume, is: "Ruling Case

573. That publication is where the Kentucky Court found a California case that supported its decision. *Compare Ford*, 26 S.W.2d at 552 (citing *Rogers Dev. Co. v. S. Cal. Real Estate Inv. Co.*, 115 P. 934, 936 (Cal. 1911) ("The lien of a vendor is founded upon the just principle that the vendee ought not to be allowed to keep land unless he pays the price. It follows from this that it attaches only to the estate or interest for which the price was to be paid.")), *with* 27 R.C.L. § 315, p. 573 n.17.

As for the rule's longstanding status in Kentucky jurisprudence, it served as the basis for deciding a nearly 180-year-old opinion, *Dawson v. Mitchel*, in which two simultaneous purchases between the same parties resulted in separate and distinguishable vendor's liens and not what we today would call cross-collateralization. 43 Ky. 412 (1844). Said the Court, "[A]lthough the two tracts adjoin each other . . . , yet as the contracts were, in fact, distinguished by the execution of distinct writings, by which they were respectively evidenced, as a

---

Law As developed and established by the Decisions and Annotations contained in Lawyers Reports Annotated, American Decisions, American Reports, American State Reports, American and English Annotated Cases, American Annotated Cases, English Ruling Cases, British Ruling Cases, United States Supreme Court Reports and Other Series of Selected Cases." The title itself tells the story that, when the series commenced, American jurisprudence was still under the influence of English law. As that influence dissipated, uniquely American treatises prevailed. According to the original 1936 claim of copyright for *American Jurisprudence* Volumes 1 and 2, "American [J]urisprudence [is] a comprehensive text statement of American case law, as developed in the cases and annotations in the annotated reports system, *being a rewriting of Ruling [C]ase [L]aw* to reflect the modern developments of the law." Library of Congress, Catalog of Copyright Entries, Vol. 33 For the Year 1936, p. 361 (U.S. Gov't Printing Office, Washington: 1940) (emphasis added). *See Ruling Case Law*, BALLENTINE'S LAW DICTIONARY (3d ed. 1969) ("The predecessor of American Jurisprudence, abbreviated in citation as R. C. L. *See* **American Jurisprudence**.").

-6-

distinct price was fixed on each, and as the conveyance of each was made to depend upon the payment of its price, and not upon the payment of the price of both, the sales are to be considered as separate and distinct, and that *the vendor's lien, for the price of each tract, is confined to that tract alone*." *Id.* at 413 (emphasis added).

*Ford v. Ford's Executor*'s statement of the rule almost a hundred years ago is its last appearance in Kentucky jurisprudence. That makes it no less precedential. This Court lacks "the authority to declare that decisions of the Supreme Court of Kentucky or its predecessor court have implicitly been overruled because of age. SCR 1.030(8)." *Revenue Cabinet v. Kentucky-American Water Co.*, 997 S.W.2d 2, 7 (Ky. 1999).

Given the nature of modern real property transactions, it is not surprising this issue of equitable or vendor's liens arises less frequently. Other states have continued to recognize the rule somewhat more recently. In *White v. White*, 129 So. 2d 148 (Fla. Dist. Ct. App. 1961), the court used language as direct as this Court uses today because it is perfectly suited to the facts of this case: "A vendor's lien [a]ffects only the particular land sold by the vendor and does not cover other real property owned by the vendee, as in the case of a judgment lien." *Id*. at 152 (spelling corrected).

"[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record. *See, e.g.*, *Kentucky Farm Bureau Mutual Insurance Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991)." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009). We see no legal error in the circuit court's application of law to the undisputed material facts of this case. The circuit court made no mention of the rule applied here because our rules do not require an express statement why summary judgment is granted. *Wilson v. Southward Inv. Co. No. 1*, 675 S.W.2d 10, 13 (Ky. App. 1984) ("[T]here is no procedural requirement for the court, in rendering a summary judgment, to attach findings of fact or conclusions. CR[3] 52.01; CR 56.01."). This Court concludes that it is long overdue that we remind bench and bar of the well-established, yet infrequently stated rule applied in this case.

## CONCLUSION

The circuit court did not err when it granted summary judgment in favor of Appellee. Therefore, we affirm.

ALL CONCUR.

---

[3] Kentucky Rules of Civil Procedure.

BRIEFS FOR APPELLANT:

Carroll M. Redford, III
Elizabeth C. Woodford
Lexington, Kentucky

BRIEF FOR APPELLEE MATRIX
FINANCIAL SERVICES:

Amanda P. Thompson
Lexington, Kentucky

Phillip S. George, III
Newport, Kentucky