## Cockrill v. Chandler.

(Decided May 5, 1925.)

### Appeal from Allen Circuit Court.

1. Fraudulent Conveyances—Deed to Wife, Three Days After Grantor had been Sued, Fraudulent, Under Evidence.—In action under Civil Code of Practice, section 439, to obtain satisfaction of judgment, alleging conveyances of debtor to be fraudulent, evidence as to consideration held insufficient to support deed to wife, executed three days after grantor was sued.

2. Fraudulent Conveyances—Evidence Held to Show Debtor was Diligently Preparing to Defeat Collection of Claim.—In action under Civil Code of Practice, section 439, to obtain satisfaction of judgment, conveyances of debtor being alleged to be fraudulent, evidence held to show that debtor was diligently preparing to defeat collection of claim within provision of Ky. Stats., section 1906.

3. Notice—Person Will be Charged with Knowing what One of Ordinary Prudence would Know Under Known Facts.—A person will be charged with knowing what one of ordinary prudence would know under the facts known to him.

4. Fraudulent Conveyances—Good Faith in Accepting Conveyance from Member of Family, Made with Fraudulent Intent, Must be Clearly Proven.—Good faith in accepting conveyance from member of family, made with fraudulent intent, must be clearly established, as no presumption exists in favor of transactions between members of family.

5. Fraudulent Conveyances—Son of Debtor Held Charged with Notice of Fraudulent Intent.—Son who lived with father and knew his circumstances, on accepting one of two deeds conveying all his property subject to execution, held put on inquiry, and charged with notice of fraudulent intent within provisions of Ky. Stats., section 1906.

6. Fraudulent Conveyances—Son-in-law and Daughter who Accepted Conveyances Held Put Upon Notice of Father's Fraudulent Intent.—Where debtor, to defraud creditors, conveyed land to wife and son, and thereafter he and wife conveyed to daughter, and son gave mortgage to daughter's husband, son-in-law and daughter held put upon notice of fraudulent intent of father by reason

of their intimate relation with him, within provisions of Ky. Stats., section 1906.

OLIVER & DIXON for appellant.

HARPER & DENTON and GOAD & GOAD for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

On January 23, 1922, J. D. R. Chandler conveyed to W. C. Cockrill a tract of land in Allen county, Kentucky, containing, as shown by the deed, 150 acres, in consideration of $7,000.00, of which $5,000.00 was paid in cash, $1,000.00 a few days later and a note for $1,000.00 was executed for the remainder. Shortly after this Cockrill learned that Chandler, in assessing the land, only listed it at one hundred acres and that the deed to Chandler for the land only called for 124 acres. He thereupon complained to Chandler that the tract did not contain 150 acres as represented to him in the sale. On March 14, 1922, Chandler bought of D. A. Britt a tract of land, which was on that day conveyed to him by Brit and wife, containing 125 acres for $3,000.00 and paid the entire consideration except a note for $500.00. On March 15th Cockrill filed his petition against Chandler alleging that there was a deficiency in the tract of land sold him and praying judgment against Chandler therefor. Process was served on Chandler on March 17th. On March 20th Chandler conveyed to his wife, Mary F. Chandler, in consideration, as recited in the deed, of the sum of $1,500.00 in hand paid, one-half of the land conveyed to him by Britt, and on the same day he and his wife conveyed to his son, Edward Chandler, and Edward's wife, Iva May Chandler, the other half of the Britt land in consideration, as recited in the deed, of the sum of $1,500.00 in hand paid. This was all the property that Chandler had then subject to execution. At the April term of the court Chandler filed answer to the petition of Cockrill denying its allegations. The proof was taken by depositions in May and June, and at the September term of the court, the case being regularly submitted, was heard by the court and judgment was entered in favor of Cockrill v. J. D. R. Chandler for $2,000.00 for the deficiency in the land. Execution was issued in due time on the judgment and was returned no property found on November 27, 1922. In the meantime, on September 12, 1922, J. D. R.

Chandler and wife had conveyed to Susan Clay, their daughter, the wife of G. E. Clay, the half of the land which he had conveyed to his wife on March 20th. This deed, as recited therein, was made in consideration of the sum of $1,500.00, of which $1,000.00 was paid in cash and $500.00 was represented by the note to Britt, which the grantee assumed and agreed to pay. This deed also included the entire interest of J. D. R. Chandler in the tobacco crop grown on the farm in the year 1922 for the consideration of $250.00 in hand paid. J. D. R. Chandler's interest in this tobacco was then the only property he had subject to execution. On October 20, 1922, Edward L. Chandler and wife executed to G. E. Clay, the husband of Susan Clay, a mortgage on their one-half of the land to secure a note of $650.00. On December 11, 1922, Cockrill filed this suit under section 439 of the Code to obtain satisfaction of his judgment, alleging that the deeds executed by J. D. R. Chandler to his wife, his son and his daughter, and the mortgage executed by Edward Chandler and wife to his brother-in-law, G. E. Clay, were each and all of them made for the purpose of cheating, hindering and delaying him in the collection of his debt, and praying that they all be set aside and the lands be subjected to his claim. Answers were filed controverting the allegations of the petition, proof was taken and on final hearing the circuit court dismissed Cockrill's petition and adjudged a sale of the land mortgaged to G. E. Clay to satisfy the note secured thereby to Clay. From this judgment Cockrill appeals.

The reason given by J. D. R. Chandler for the execution of the deed to his wife for one-half of the land is thus stated by him, putting his answers in narrative form: "I just deeded it to her; I thought she ought to have it. Well, in one sense I got a consideration, and in the other I didn't. I had been using her money all along the line. I don't know how much money she had. When I had to have some and she had it I got it. We were living together and trying to make a living. She made money from the milk, butter and chickens." This evidence is entirely insufficient to support the deed to his wife, made three days after he had been sued by Cockrill for the deficiency in the land.

As to the deed to his son Edward, executed on the same day as the deed to his wife, he and his son testify that they had made a bid of $3,000.00 on the Britt place, which Britt declined to accept. Edward then went up to

Franklin to look for a place, and while he was gone his father closed the deal with Britt and took the deed to himself, but on his return agreed to let him have half the land and made him the conveyance accordingly; that he held two notes on his father for $500.00; that he sold his father a half interest in a team he had, to be used on the place, and paid him the rest in money, $706.00, of which he borrowed $650.00 from his brother-in-law, G. E. Clay. Clay confirms this testimony as to the borrowing of the $650.00 from him, and Edward says that he had the remainder of the $706.00 in his pocket or collected it. He also says that he had no knowledge that the suit had been brought against his father by Cockrill or of Cockrill's claim against his father. He and his father lived on the place that year together, also the next year, each occupying the same house, and when the crop was raised and before the execution against his father came out he bought back his father's half interest in the team for $175.00, which he then paid him in cash.

The deed to Susan Clay is thus explained by them: G. E. Clay had lent J. D. R. Chandler from time to time money amounting in all to $1,325.00. He had paid him $375.00 on this and owed him a balance of $950.00. Clay was going to leave for Texas and to get his matters settled up he gave Mrs. Chandler a check for $300.00, assumed the payment of the Britt note for $500.00 and had the deed made to his wife, which included not only one-half of the land but also J. D. R. Chandler's half of the tobacco crop. He testifies that he had no notice of the Cockrill suit and made the trade in good faith for the consideration indicated. After this he took the mortgage on October 12th to secure the payment of the $650.00 note, which Edward Chandler had executed to him in March when he bought the land.

The facts leave no doubt in the mind of the court that J. D. R. Chandler was diligently preparing to defeat the collection of Cockrill's claim against him in his suit then pending and that all these transactions were had by him for the fraudulent purpose of defeating the collection of this claim within the provisions of section 1906, Kentucky Statutes. Whether or not Edward Chandler, G. E. Clay and Susan Clay should be treated as innocent purchasers is a question of more difficulty. The statute provides:

"This section shall not affect the title of a purchaser for valuable consideration, unless it ap-

pear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.'' Kentucky Statutes, section 1906.

Edward Chandler and his father lived together. Mrs. Clay lived not very far from him and was a frequent visitor at the house. It is a well settled rule that a person will be charged with knowing what a person of ordinary prudence would know under the facts known to him. No presumption exists in favor of transactions between members of a family, the object and purpose of which on the part of the grantor is to defeat his creditors, and in such cases the grantee will not be protected unless the evidence clearly establishes the good faith of the transaction. Edward Chandler knew his father's circumstances; he knew that his father, by the deeds executed on the same day to him and his mother, had stripped himself of all property subject to execution; he was put on notice to inquire why this was done. Any reasonable man under such circumstancse would have inquired; not only so, but before the execution on the judgment in favor of Cockrill was issued he bought back from his father one-half of the team for $175.00, cash in hand, although his father continued to live in the same house with his him and was still working on the farm and continued there the next year. In view of the intimate relations between these two men the court cannot escape the conclusion that this son should be charged with notice of his father's intent in making these transactions.

As to G. E. Clay and Susan Clay, a question of more doubt is presented, but we have reached the conclusion that the daughter cannot be distinguished from the son and that G. E. Clay and his wife had knowledge of facts which should have put them on inquiry in all of these transactions. The deeds to them by their recitals put them on notice of the facts recited. The intimacy was such that they should have understood.

We, therefore, conclude that all of these deeds and the mortgage to G. E. Clay should be held fraudulent as to Cockrill and that the land should be subjected to his debt. The Britt note will first be paid from the proceeds of the sale of the land, then Cockrill's debt before anything is paid to G. E. Clay, Susan Clay or Edward Chandler.

Judgment reversed and cause remanded for a judgment as above indicated.