# Turner v. Hammock et al.

(Decided June 4, 1929.)

TODD & BEARD for appellant.

GILBERT, PICKETT & MATTHEWS and THAD CHEATHAM for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

A question of priority is presented by this appeal. J. B. Turner instituted the action against Dan Hammock to recover $1,364.84 advanced to him and procured an order of attachment which was levied upon a quantity of tobacco. Hammock admitted owing Turner $1,289.84 for money advanced, and judgment went accordingly. The attachment was sustained, but Turner's lien thus obtained was subordinated to a mortgage lien for $800 asserted in an intervening petition by T. S. Brown. The

tobacco seems to have been sold, but brought less than the mortgage debt, leaving nothing to apply on Turner's judgment. Turner attacked the mortgage to Brown as fraudulent and has appealed from the judgment denying priority of his attachment lien. The sole question involved is the validity of Brown's mortgage. Hammock was the tenant of Turner and agreed to pay as rent one-half of the tobacco crop. Turner was to advance money to carry Hammock through the summer season and reimburse himself, when the tobacco was sold, out of the proceeds of the tenant's share. The contract was carried out without controversy the first year, but the crop that year did not produce sufficient money to repay Turner for his advancements. The balance was carried into the next year and Turner put up the money to provide sustenance for Hammock and his family and to pay the wages of his workmen. On a settlement there was due Turner the sum of $1,289.84. Hammock demanded, at the end of the second year, the privilege of selling his one-half of the crop. Turner offered to haul the tobacco to market free of expense, but Hammock hired a truck at his own cost and had the tobacco hauled in the night-time from Harrison county, Ind., where it was grown, to Shelbyville, Ky., where it was sold. Turner pursued the tobacco and caused the attachment to be levied at Shelby-ville. Brown then came forward with his mortgage, which was dated February 3, 1927, acknowledged October 3, 1927, and recorded on the following day in the county where the tobacco had been grown and was then stored in barns. Turner attacked the mortgage on the ground that it was given without consideration and for the fraudulent purpose of cheating, hindering, and delaying the creditors of Hammock, including the plaintiff. Brown took the position that Hammock was indebted to him for wages for the two years he had been farming for Turner in Indiana. Brown was an intimate friend of Hammock and lived with him as a member of his family. When Turner advanced money to pay the wages of the employees, no claim was made for wages for Brown. When attention was directed to the matter, Hammock said that Brown was living with him as a member of his family and was not claiming any wages. On one occasion a small payment was made to Brown on the order of Hammock and at another time a pair of shoes was furnished him by Turner and charged to Hammock. Brown knew Turner was providing sustenance for the family of

Hammock and paying the wages of his workmen. Brown said he was not in need of money and did not ask for his wages. He was living on provisions paid for by Turner. The equity of Turner is very strong. Cheatham v. Terrell's Assignee, 170 Ky. 429, 186 S.W. 128. L. R. A. 1917C, 1. Brown made his home with Hammock the year round and there is some proof that his services during the tobacco season was fully compensated by his annual board. Brown and Hammock deny this, and insist that he earned the wages which the mortgage was designed to secure. But whether so or not, it does not comport with fairness and good faith to permit Brown to remain silent under the circumstances, to accumulate his wages for two years, and then to obtain security against the creditor whose advancements, with Brown's knowledge, were made on the faith of the tobacco crop grown on his ground. Hammock was insolvent and his circumstances and conditions were well understood by his friend. Brown testified that the wages were due him under a contract with Hammock, who fully corroborated him. The mortgage was given with meticulous care and recorded at the expense of Hammock. "He knew the advantage of surrounding the transaction with every semblance of legality. It was 'most iniquitously legal,' " as this court once described a transaction in evasion of state law. Adams Express Co. v. Commonwealth, 124 Ky. 171, 92 S. W. 932, 29 Ky. Law Rep. 224, 5 L. R. A. (N. S.) 630. Fraud is not presumed, but it may be inferred from proven facts and circumstances. Winfrey's Trustee v. Winfrey, 150 Ky. 145, 150 S. W. 42; Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992; Mount v. Fourth Street Bank, 156 Ky. 503, 161 S. W. 220.

It is palpable that Brown and Hammock were cooperating for the purpose of beating Turner, and the mortgage was the instrumentality designed by them to accomplish the purpose under the forms of law. Brown knew of Turner's claim and of his reliance on the crop as security. A conveyance is declared to be fraudulent when its object or effect is to defraud another, or the intent with which it is made is to avoid some duty or debt due by or incumbent upon the party making the transfer. 27 C. J. p. 415, sec. 11. It is not sufficient that the conveyance was founded on a good consideration or was made with a bona fide intent; it must be both, and if deficient in either particular, although good between the parties, it is voidable as to creditors. McDonough v. Mc-

Gowan, 165 Ky. 425, 177 S. W. 277; 27 C. J. p. 416, sec. 12; In re Duggan (D. C.) 182 F. 252. Whatever fraud creates justice will destroy (Vreeland v. N. J. Stone Co., 29 N. J. Eq. 188), and the fact that a conveyance prejudices the right of a creditor is a dominant element in determining its character (27 C. J. sec. 109, p. 469). The "vermiculations of fraud" "are chiefly traceable by covered tracks and studious concealments" (Bliss v. Couch, 46 Kan. 400, 26 P. 706), and the law will scrutinize with circumspection transactions between persons living together, as were these parties (27 C. J. p. 641, sec. 406): Cf. Cockrill v. Chandler, 208 Ky. 750, 271 S. W. 1051. Brown explains that he did not ask Turner for money, but demanded the security from Hammock because Hammock was the man who hired him. Cf. Terrell v. Cheatham, 200 Ky. 671, 255 S. W. 262. Hammock admitted that he wanted to secure Brown, even though it resulted in injury to Turner. Although Turner had constructive notice of the mortgage from the time of its recordation, he had no actual knowledge of it, and had then advanced practically all of the money to Hammock, which had been used in paying wages and in supplying provisions for him and his family. Brown, although not related by blood was an actual member of Hammock's family for the two years involved, and the food he ate at that board was, with his full knowledge, provided by Turner. These advancements were made by Turner relying upon the security of the crop to be produced by his tenant on his land. The mortgage to Brown was designed to frustrate the arrangement. It shocks the sense of justice, and the attempted explanations are weak and unconvincing. The question of fraud is compounded of fact and law (Jewell v. Knight, 123 U. S. 426, 8 S. Ct. 193, 31 L. Ed. 190) and, although we repose confidence in a chancellor's finding of fact, yet when the finding does not accord with our conclusions from the evidence, or the requirements of the law, we must render judgment for the party entitled thereto on the facts proven. Walker v. Walker, 228 Ky. 357, 15 S. W. (2d) 298; Lewis v. Shell, 205 Ky. 624, 266 S. W. 254; Downing v. Whitlow, 211 Ky. 294, 277 S. W. 262.

We are satisfied that the mortgage to Brown was a fraudulent conveyance in so far as Turner was concerned, and the court erred in denying priority to Turner.

It should have ordered the fund in court paid to Turner to apply upon his judgment.

The judgment is reversed for a judgment in accordance with this opinion.