## Miller v. Wilson et al.

(Decided March 9, 1934.)

BENTON, BENTON, SMITH & LUEDEKE for appellant.
ROGERS & ROGERS for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

On May 7, 1927, the appellant, plaintiff below, filed his petition in the Boone circuit court against Leonidas Wilson and wife, Irene Mae Wilson, alleging that on April 11, 1927, they had entered into a contract for the exchange of certain therein described properties and that, pursuant thereto, the plaintiff had conveyed his farm of some 400 acres, situated in Boone county, Ky., to Irene Mae Wilson, who (plaintiff alleged) was a volunteer holding under the husband with notice and without consideration paid him therefor.

The petition further alleged that some $10,000 of

the agreed purchase price for its conveyance remained unpaid, to secure which he sought to be adjudged and have enforced a vendor's lien against the land.

The defendant, by answer and amended answer, admitted the making of the exchange agreement and the making of the deed to Irene Mae Wilson, but denied that she was a volunteer or that no consideration was paid by her therefor. The defendant husband affirmatively alleged that the consideration paid by his wife therefor was a pre-existing debt of some $15,000 owing by him to her. Further he pleaded that, although under the parties' contract of exchange there was an agreed difference of equities between the exchanged properties, for the adjustment and payment of which it was provided by the terms of the exchange agreement that the defendant would give to the plaintiff a note and mortgage on or convey him outright therefor a proportionate interest in a second apartment building, situated at 1676 E. 133 street, Cleveland, Ohio, they settled this difference in the latter way as was evidenced by their later "letter agreement," dated April 26, 1927, wherein the plaintiff acknowledged receipt of a one-third interest in said building, as satisfying the terms of the exchange agreement and for such reason defendant denied that any part of the purchase money for the farm remained unpaid and therefore that plaintiff necessarily had no lien thereon to secure the same—that is to say, he pleaded that the consideration for the conveyance of the farm lands was paid for in full by the one-third interest in this other property conveyed plaintiff, as he alleged was provided might be done by the terms of the exchange agreement.

To this plea of payment, plaintiff by reply set up in avoidance of it that about April 20, 1927, or before his execution and delivery of the deed for the farm to the defendant (and in lieu of the indefinite provision of the contract referred to in defendant's answer, that plaintiff "was to receive the difference of his equity, in the form of a mortgage or a proportionate interest in a similar flat building at 1676 East 133rd Street, East Cleveland, Ohio"), such indefinite arrangement being unsatisfactory to plaintiff, he and defendant entered into a new agreement for the payment of this balance owing for the exchanged farm whereby defendant agreed and promised to take immediate steps to borrow on the farm conveyed him a sufficient sum to cover the balance

of the unpaid consideration due plaintiff, or so much thereof as he could borrow, and therewith satisfy his lien debt; that pursuant to such agreement, the defendant, upon lodging the said farm deeds made him for record, did make written application to a farm loan association in the name of defendant's wife (in whose name the deed was made) for a loan of $12,000 upon the security of said farm, with which to pay same, but within a day or two thereafter, without notice to plaintiff, defendant withdrew such application; that plaintiff did nothing to waive and never intended to waive his purchase-money lien on the farm until such loan was obtained; and that the defendant's wife, Irene Mae Wilson, at all times had knowledge of these facts stated in the reply and petition.

The facts as disclosed by the very voluminous evidence taken in the case are substantially as follows: The plaintiff, Frederick Miller, being the owner of a farm of some 400 acres in Boone county, Ky., which he desired to sell or trade, conferred with John Holderfield, a real estate agent of Cincinnati, Ohio, as to its sale or exchange, who accordingly so advertised the farm. The defendant, who appears to be also something of a real estate agent, with a special leaning towards dealing in real estate by exchange, saw in the advertisement the opportunity for a profitable deal and, looking to its consummation, conferred with the agent, Holderfeld, and thereafter visited and inspected plaintiff's farm. A meeting of plaintiff and defendant was arranged at Holderfeld's office, when it was proposed that plaintiff exchange with defendant both his farm and an encumbered flat building he had in Cincinnati for certain real estate situated in Cleveland, Ohio, which defendant claimed to own.

Looking to making such exchange of their properties, plaintiff accompanied the defendant to Cleveland, for the purpose of viewing and inspecting Wilson's property. Two apartment buildings, described as Nos. 1696 and 1676 East 133rd street, were there exhibited to plaintiff, either of which was offered him in exchange as being of the value of $66,000, subject to mortgage liens of $43,000. Defendant represented that he thus had a contract equity in each building worth $23,000, which he proposed to exchange with plaintiff at such valuation and to also pay certain delinquent taxes owing thereon, for plaintiff's Boone county farm, valued at $24,000, and

his equity in the Cincinnati flat building, valued at some $8,000, and to secure plaintiff in the payment of the agreed difference in the value of their equities in the properties thus exchanged, amounting to some $9,500, by executing him notes in such amount, secured by a mortgage upon his equity in the second Cleveland building or to convey him a proportionate interest in his equity therein in satisfaction of such difference.

Such exchange agreement being consummated, the same was evidenced by their written contract of April 12, 1927, which is as follows:

"This instrument made this 11th day of April 1927, by and between Leonidas Wilson, Westwood, Cincinnati, Ohio, first party, and Fred Miller, Ft. Thomas Ky., second party as follows:—First party agrees to exchange the ten apartment building situated at 1696 East 133rd St. East Cleveland, Ohio, Windemere Hadon Subdivision, now in the name of John F. Olson and Tekla Olson, who have placed their deeds to this property properly notarized, and left with the United Banking and Trust Company at Cleveland, Ohio, subject to incumbrance of approximately $43,000.00. Value of said building $66,000.00. Equity $23,000.00. On above described apartment the party of the second part agrees to exchange his farms containing approximately 407 acres, situated on Big Bone Creek and the Ohio River, near Hamilton, Boone County, Ky. Deeds to farms recorded in deed books #66, page 230, and book #66, page 228, County Clerks Office at Burlington, Boone County, Ky. These farms to be delivered clear free and unincumbered, except a one-sixteenth oil-right on 167 acres. Second party also to deliver a yellow brick St. Louis Flat, located at 499 Sandheger Place, Clifton, Cincinnati, Ohio, subject to a Building and Loan mortgage of $9,500.00, and second mortgage of $2,300.00 held by Fred Richt. Otherwise St. Louis flat to be clear of all other incumbrances. Party of the second part to receive said ten apartment building subject to $32,-000.00 first mortgage, due Atlas Bldg. & Loan Association of Cleveland, Ohio, and a second mortgage of $11,000.00 due either Henry Spira or Jacob Bruml, and party of the second part to receive the difference of his equity in form of a mortgage or a proportionate interest in a similar flat building

situated at 1676 East 133rd St. East Cleveland, Ohio. Said difference in equitys in the sum of about $11,000.00 to be credited to the party of the second part. In the event mortgage is taken, which is to be 6% interest. Interest semi-annually. Principal to run for five years on or before. First party to pay the State and County tax as of June 1927, and the second party to pay the taxes thereafter. Taxes on above mentioned farm to be paid by party of the first part, after party of the second part has paid one-half of the taxes for the year 1927. Party of the second part to pay June taxes on Sandheger property, due in June 1927. Party of the first part to pay thereafter. Party of the second part to pay $2,300.00 in cash to present owners and Loan Association in their respective parts at the time of their execution of the deed. Party of the first part to have 20 days in which to deliver the Cleveland property. If at the time delivery cannot be made, on the Cleveland properties, contracts are then and not until then to be termed null and void. Rents on the Cleveland, Ohio apartment to be adjusted as of day of closing, or when title is passed.

"In witness whereof the said parties herein mentioned have set their hands in all sincerity and good faith and on this 11th day of April 1927, and have caused this contract which both parties consider legal and binding contract to be signed by them."

Plaintiff thereupon, pursuant to the provision of the contract, turned over to defendant his check for $2,300 made payable to the Cleveland bank which held in escrow the owner's deed, executed to blank grantee, for the two Cleveland apartment buildings. Defendant arranged to withdraw this deed from escrow, and, after having plaintiff's name, rather than his own inserted therein as the direct grantee of both properties from its vendors, had it sent plaintiff. The deed was so drawn as to recite plaintiff's assumption of the mortgage lien encumbrance of some $43,000 upon each of the two properties. Defendant, it appears, thereupon wrote plaintiff, requesting that he give him a written statement showing that he held deed to one of the two properties thus conveyed him, No. 1576, as trustee for him, subject to plaintiff's right to a mortgage on defendant's equity therein or to a sale of such proportionate part of

his interest therein required to satisfy plaintiff's lien debt of some $9,500 owing him upon their property exchange. This requested written acknowledgment of defendant's interest in the second property, bearing date of April 26, 1927, with some further notation and addition made thereto, was accordingly duly signed, by the parties and reads as follows:

"April 26, 1927

"Mr. Leonidas Wilson

"Dear Sir: This instrument is made for the specific purpose of I, Fred Miller of Ft. Thomas Ave., Ft. Thomas Kentucky showing and admitting that you Leonidas Wilson is the true and lawful owner of two thirds interest in the property which is an eleven apartment building with six garages and all appurtenances belonging to the property which is located at 1676 East 133rd St., East Cleveland, Ohio, and better known as Lot #10 on record at the Cuyahoga County Court House. The above described property is on the records mentioned above in the name of Fred Miller, but at this instance I am signing my name to this document so as to show my proportionate interest in the above mentioned property, said two thirds less the amount of delinquent taxes and the coming June of 1927 taxes. When said taxes are paid as per contract, then and then only are two thirds owner or on payment of $9,534.59 you are full owner.

"Most sincerely,              Fred Miller."

Plaintiff contends that this second writing, or "letter agreement," which he signed when requested by defendant, was at the time represented as desired only for the purpose of evidencing defendant's ownership of the equity in the second Cleveland property, which had been included in the vendor's one deed made to plaintiff conveying the second as well as the other Cleveland property conveyed plaintiff in exchange, and further that its apparent recital of conveyance of a third part of defendant's interest therein to plaintiff was only intended to acknowledge that a lien was given plaintiff upon such second property of defendant as additional security to his vendor's lien held under the exchange agreement against the farm conveyed defendant, and was not intended to be in lieu of or represent or be a waiver of his vendor's lien upon the exchanged farm or

to evidence the satisfaction of such lien debt by his exercise of his contract option to purchase such one-third of defendant's interest in the second property.

Also it appears that plaintiff, pursuant to the terms of the exchange agreement, conveyed his Boone county farm by a deed to defendant wherein the name of the grantee was, at defendant's request, omitted, and which was supplied by defendant's insertion of his wife's name, as grantee therein, and the consideration also recited as paid.

Further, it appears that, according to the testimony of plaintiff and his witnesses, the plaintiff, at the time of thus drawing and executing this deed, informed defendant that he was not satisfied with the uncertain and indefinite provisions of the contract as to how defendant should pay him $9,500, the agreed balance of the purchase price owing him upon his farm and also had then stated that he did not want to adjust it by buying any further interest in defendant's second Cleveland property, whereupon this matter was then adjusted by making a subsequent oral agreement providing that defendant would pay the amount owing him out of a loan which he promised he would apply for and secure from the Federal Farm Bank; that when his deed was upon such understanding delivered to defendant, he went with plaintiff and made written application in his wife's name for a mortgage loan on the farm, with which to pay plaintiff's debt and make some improvements thereon, but that defendant, in fraudulent breach of his promise to pay his lien debt, within a day or two thereafter canceled his application for the loan, nor did he otherwise afterwards pay any part of plaintiff's lien debt. Notwithstanding defendant's cancellation of his loan application thus made, he claims that shortly thereafter he secured a mortgage loan upon the farm from his brother, Edward Wilson, for $15,000 in favor of his wife, which was at once recorded as a mortgage lien upon the farm.

Upon final submission of the cause for judgment upon the record and exhibits, plaintiff's petition was dismissed with costs.

Complaining that the learned chancellor erred in so decreeing, the plaintiff prosecutes this appeal.

The appeal presents but one question for our re-

view and that is, Was the plaintiff entitled to a vendor's lien against the lands conveyed to defendant's wife under the facts here shown? The learned chancellor found that plaintiff was not so entitled and dismissed his petition.

The appellee's pleaded defense to plaintiff's claim is that he had no lien upon the property conveyed by way of exchange to his wife for the reason, he contends, that by the language of their writings evidencing their exchange contract, it is manifest that the parties intended to convey the farm free and clear of both incumbrance and lien and that any difference owing plaintiff upon its exchange was to be adjusted either by mortgage notes given against or sale made plaintiff of other property of defendant; he contends that, even should it be argued that it was the intention of the parties under their contract that plaintiff was to have a vendor's lien upon the farm property as against the defendant or his wife, holding as a volunteer with notice under him, he waived such lien by reason of his later exercising his contract option to purchase a one-third interest in defendant's equity in a second Cleveland property, in satisfaction of his alleged lien debt, which he insists was clearly shown to have been done by plaintiff's signed letter agreement of April 26, 1927. Further, defendant contends that the alleged subsequent oral modification of the terms of their written contract of April 12th, pleaded by plaintiff in his reply, and by which it was averred that defendant agreed with plaintiff to apply for a loan, with which to pay him his debt, constituted a departure or variance from his cause of action as set out in his petition and should, as such, have been stricken from the reply upon his motion, and if pleaded, it should have been presented by way of amended petition.

Appellant, on the other hand, contends that while no reservation of a vendor's lien was made in the deed executed by him to defendant in blank as to its grantee, nevertheless under section 2358, Kentucky Statutes, plaintiff had an enforceable lien against the land conveyed, whether held by defendant or one holding as a volunteer, or with notice, under him.

In support of this position that the defendant Mrs. Wilson holds the land under her husband as a volunteer and without consideration paid therefor, notwithstand-

ing Wilson's averment that he deeded the farm over to her in consideration of a previous loan she made him, it is to be noted that according to the testimony of both Mr. and Mrs. Wilson, Mr. Wilson has for years carried all of his estate, whatever its form—whether money or otherwise—in the name of his wife; that he has but one bank account, which, while carried in his name as trustee for her, is yet used and drawn upon, it appears, by him for every need and purpose, whether personal or business, and that same is freely employed by him for all purposes except for the satisfaction of his obligations. The exhibit made of his bank account thus carried for a number of years shows that he drew upon it in 1925 for the purpose of purchasing Florida land and from such instance of its use he argues that, as he thus then used a part of this bank account carried in his name as trustee, such fact made the same a loan to him by his wife, which he now here proposes to repay, by conveying to her plaintiff's farm, deeded to him in blank.

Under the abundant evidence found in the record as to the intimate business relationship existing between the defendant and his wife and their close co-operation in carrying out his many deals, wherein it is admitted that he used this one bank account as was his wish for all transactions and purposes, in which the funds of this account were needed, it is idle to contend that his alleged use of it for making the Florida land deal was a loan by the wife to defendant or as such constituted a valid consideration given by her for plaintiff's farm. We have no hesitancy in concluding, upon all the facts as they appear here in evidence, that the defendant Irene Mae Wilson held plaintiff's farm lands, here conveyed her by her husband, as a volunteer thereof or without consideration paid him therefor and also with full knowledge of the fraudulent practices permeating and encompassing the exchange transaction effected between plaintiff and defendant, under and pursuant to which the farm was conveyed her. Therefore, it must follow that if under the facts of the case as here shown, plaintiff was entitled to a lien against the lands for the unpaid remainder of its purchase price as against his defendant vendee, he is alike entitled to the same and its enforcement against his wife, the defendant, Irene Mae Wilson, as a volunteer holding under him, despite the manner of its making to a blank grantee and even

though no lien was reserved in the deed. Section 2358, Ky. Stats. Carroll's 1930, and footnotes thereto. Ford v. Ford's Executor, 233 Ky. 673, 26 S. W. (2d) 551.

We will next consider appellant's contention that under the terms of his agreement with defendant, he was to have a lien for the unpaid balance, owing him upon the exchange of properties, upon the land conveyed defendant and also, as additional security therefor, a mortgage on or conveyance of an interest in defendant's equity in other Cleveland property, and that the later agreement of April 26th, purporting to acknowledge that he had received such one-third interest in defendant's equity in the second Clevland property, was signed by him with the understanding, induced by defendant's representations that the writing was intended to be and could be construed as being only an acknowledgment that plaintiff's holding of such interest in the "similar property" was as additional security for his lien debt and that defendant's interest or equity therein, which had been conveyed plaintiff by the vendor's one deed for both properties, was held by plaintiff in trust for defendant; and further that, if the language of said writing was subject to the construction that it was in effect a receipt for a one-third interest in defendant's equity in the second Cleveland property, same was procured by defendant's fraud, for which it should be avoided.

Plaintiff's testimony as to the signing of this letter agreement and also as to his execution and delivery of the deed to the defendant in blank, as to its grantee, and as to its being made without the reservation of a purchase money lien therein, is corroborated by the testimony of the draughtsman of his deed and by others who were present at the time. They state that the defendant at such time was present and said that plaintiff's lien for the remainder of the land's purchase price was to be cared for and satisfied by defendant out of a loan which he would apply for and procure from a loan association through placing a mortgage thereon and that the deed was so drawn, in reciting the farm was conveyed clear from lien, to facilitate defendant's securing such loan with which to pay the lien debt thereon. The evidence further shows that at the time defendant had the deed convey his interest in the Cleveland apartment building to the plaintiff, he knew that already a foreclosure proceeding had been instituted against the

property he proposed to convey by exchange to plaintiff to collect the large mortgage debt against the same and realized that his equity in the property, except for "trading purposes," was worthless. This fact was soon afterwards demonstrated by a foreclosure of the mortgage liens upon both of the Cleveland properties in which defendant held his "trading equities," when the properties were bought in by the mortgagees, for only about two-thirds of the mortgage debt or $30,-000 each. The evidence shows that defendant was fully aware of this situation and moved with haste to consummate the exchange transaction, with a view to acquiring the plaintiff's land in his wife's name before the pretended value of his equity in the Cleveland property should entirely vanish and be nullified by the threatened mortgage foreclosure. Defendant's exchange transaction thus appears to have been consummated with full knowledge that he was in effect and in fact giving nothing in exchange for plaintiff's lands, but, relying upon the distant situs of his exchange property, well reckoned that the worthless character of his equity therein would and could not be discovered by plaintiff before he could enrich himself by effecting the deal and thereby secure plaintiff's farm without consideration under color of an exchange agreement.

The very language of this exchange agreement was in itself premonitory and sufficient it would seem, to hang out a red lantern, indicating defendant's apprehension of a later attack upon it when the real facts attending the exchange should be discovered.

That incongruous, protesting, language of the contract of April 11th referred to is as follows:

"In witness whereof the said parties herein mentioned have set their hands in all sincerity and good faith and on this 11th day of April, 1927, and have caused this contract, which both parties consider a legal and binding contract, to be signed by them."

In Addison v. Wilson, 238 Ky. 143, 37 S. W. (2d) 7, 11, this same appellee was an appellee therein upon an appeal seeking to set aside a contract very similar to the one here involved, and there the court, commenting upon the sinister purpose of a like seeming fair provision of the contract, wherein appellee had so protested his honorable purpose, said:

"The contract itself contained a declaration de-

signed to be invoked as a defense to anticipated actions or accusations. It was declared that the deal was made after both parties had seen and inspected all property involved in the trade. The precaution stamped the traders as formalists with appreciation of the value of surrounding the transaction with at least some semblance of fairness. Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285.

"Moreover, as a sort of insulation against the shock of disclosure they knew was sure to follow, the defendants had prepared and executed a remarkable document certifying:

" 'Whereas, we have this day consummated an exchange of property and merchandise, be it known that both parties to this deal have made said exchange upon their own inspection of property and merchandise placing their valuations of same, and that both parties are absolutely satisfied with all details connected with same.'

"That certificate was a confession in advance that defendants would need some fortification against an expected attack on their transaction. It is a common practice of sharp traders, but it does not deceive the courts." (Numerous supporting cases cited.)

In the case of Stonemets v. Head, 248 Mo. 260, 154 S. W. 108, 111, the court in there discussing the sinister machinations of a past master of fraudulent maneuvers said, as may well here be said:

"Now, the master, the broad daylight fact in this case is that plaintiffs were tricked out of their farm. Even he who runs may read that overlapping fact writ large in the record. It was lost to them as effectually as if an earthquake had swallowed it. * * *

"Fraud is kaleidoscopic, infinite. Fraud being infinite and taking on protean form at will, were courts to cramp themselves by defining it with a hard and fast definition, their jurisdiction would be cunningly circumvented at once by new schemes beyond the definition. Messieurs, the fraud-feasors, would like nothing half so well as for courts to say they would go thus far, and no further in its pursuit. Lord Chancellor Hardwicke in Lawley v.

Hooper, 3 Atk. 278; Clyce v. Anderson, 49 Mo. loc. cit. 40; Howard v. Scott, 225 Mo. loc. cit. 712, 125 S. W. 1158. Accordingly definitions of fraud are of set purpose left general and flexible, and thereto courts match their astuteness against the versatile inventions of fraud-doers.''

Appellant here stands stripped of his farm, unless saved through having a vendor's lien adjudged him against it for some $9,500 or that part of its purchase price which was not paid even in worthless Cleveland property equities.

Appellee further contends that plaintiff's pleading of the oral modification of his April 11th contract, made in his reply, constitutes a variance or departure. This contention we consider to be without merit. By section 98 of the Civil Code of Practice it is provided that a reply may contain ''a statement of facts which constitute an estoppel against, or avoidance of, a set-off, counterclaim or defense stated in the answer.'' The matter pleaded in the reply, seeking to establish plaintiff's right to a vendor's lien against the land, as was prayed for in his petition, did not constitute a variance within the meaning of the Code provision, but was rather in avoidance of the plea of the answer, that no vendor's lien was retained in the deed, or, if retained, was waived. The oral subsequent modification of the contract, whereby plaintiff's right to a vendor's lien upon the property was recognized and provided for, we are of the opinion constituted a plea in avoidance of its denial by defendant. The rule in such case is as stated in 49 C. J. 344:

"There is no departure when the averments of the replication or reply substantiate, fortify, or explain those of plaintiff's original pleading and are consistent therewith; nor when plaintiff is forced to plead new matter to meet and avoid allegations of the plea or answer, provided such new matter does not contradict plaintiff's original pleading and is not adopted as a new basis for relief; and in any event it has been held that defendant cannot question an inconsistency in the reply due to allegations in his answer.''

It further appears that herein the appellant did all he could to restore to appellee what he had received under the exchange contract and had deeded back to de-

fendant his equity in the Cleveland property and sent him a check for all he had received in its operation, but even without such return made by him, we are of the opinion that plaintiff would none the less have been entitled to a vendor's lien against defendant's land, as security for the unpaid part of the purchase price owing him therefor. As said in Addison v. Wilson, supra:

> "It is insisted that the finding of the chancellor upon the facts was based upon conflicting evidence, and should not be reversed by this court. The question of fraud is compounded of law and fact, and, notwithstanding the great confidence reposed in the chancellor's finding of fact, it is the duty of this court to read the record for itself, and, if such reading results in a clear conviction as to how the case should be decided, it is the duty and province of this court to render the correct judgment. Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285; Ford v. Ford's Ex'r, 233 Ky. 673, 26 S. W. (2d) 551.

> "It is only when the court, on the whole record, entertains serious doubt as to the correctness of a chancellor's conclusion, that it is not disturbed. Martyn v. Jacoby, 223 Ky. 674, 4 S. W. (2d) 684; Tackitt v. Newsom, 186 Ky. 188, 216 S. W. 376; Jacobs' Ex'r v. Meyers, 185 Ky. 594, 215 S. W. 532."

We are, therefore, of the opinion that the learned chancellor erred in dismissing plaintiff's petition and that there should have been rendered a judgment for the plaintiff adjudging him a lien against the lands conveyed Mrs. Wilson as a volunteer thereof under her husband and enforcing same by a sale of the land or a sufficient part thereof to satisfy the agreed amount of the unpaid purchase price, $9,534.59, with interest thereon from date of its conveyance.

The judgment is accordingly reversed, with direction to render a judgment consistent with this opinion.