## Melton's Administratrix et al. v. Melton's Administrator et al.

(Decided May 16, 1930.)

O. B. BERTRAM for appellants.

P. K. McELROY and H. S. ROBINSON for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

B. J. Melton died testate on September 28, 1918. The parties to this litigation agree that, by his will, Melton devised and bequeathed his estate to his wife, Mary E. Melton, for life or during widowhood, with the right on her part to use so much of the principal as she might deem necessary for her proper comfort, maintenance and support. On her death whatever remained of the devised and bequeathed estate was to be divided equally among the children of the testator by a former wife. No administration was had upon the estate of B. J. Melton, but his widow, Mary E. Melton, took possession of it, managed and enjoyed it until her death on July 11, 1928. The estate consisted of a farm of about 160 acres and some personal property consisting of three mares, a span of young mules, seven or eight head of cattle, eight or twelve hogs, and a quantity of hay, corn, and tobacco, together with some agricultural implements. The record shows that the value of this personal property was probably about $1,500. In addition, Melton had in the Taylor National Bank at the time of his death $932.21, and in the Farmers' Deposit Bank $1,173.78. When Mrs. Melton died in 1928 she had on hand two certificates of deposit issued by the Taylor National Bank, one for $2,000 and one for $1,000, the latter being made payable to her. There was no dispute over the fact that the certificate for $2,000 was a part of her husband's estate, and on her death it was promptly turned over to her husband's children as provided in his will. However, as to the certificate for $1,000, Mrs. Melton's

brother, J. R. Newton, called in this record "Dick Newton," asserted ownership to it on the ground that it was his sister's money, and that she had made him a gift of the certificate shortly before her death. The certificate being in his possession, and he refusing to turn it over on demand to the children of B. J. Melton, they brought this suit against him to recover its possession. Dick Newton filed his answer setting up his ownership to the certificate on the grounds above set out, but, some question arising as to whether or not he could establish a gift to him by his sister of the certificate, he cross-petitioned against the administrator of his sister and asked that the administrator be required to set up any claim he had to the certificate or be forever barred. The administrator thereupon filed his answer which first traversed the claims of the children of B. J. Melton and then in effect prayed the court, so far as the issues between him and Dick Newton were concerned, to protect the interests of the estate. Dick Newton died before the trial, and the action was duly revived. The case was submitted to the court without the intervention of a jury, and, without separating the law and facts, the court entered a judgment dismissing the petition of the children of B. J. Melton and adjudging that, as between Dick Newton's estate and the administrator of Mary E. Melton, the certificate belonged to the administrator. From that judgment the children of B. J. Melton and the estate of Dick Newton have appealed in so far as the judgment affected their respective claims.

The essential question for determination in this case was whether the $1,000 certificate of deposit represented money belonging to Mrs. Mary Melton or to the estate of her husband. There being no separation of law and facts, the judgment of the court must be taken as one entered upon the verdict of a properly instructed jury and cannot be reversed unless it be palpably against the evidence. Osborne v. Watson, 217 Ky. 138, 289 S. W. 218. The certificate of deposit for $2,000, which it is conceded belonged to the estate of B. J. Melton, started with a certificate for $1,000 issued by the Taylor National Bank on July 31, 1920. At that time the estate of B. J. Melton had on deposit in the Taylor National Bank less than $850, and the bank account of that estate shows no withdrawal of any amount to be incorporated in that certificate. On July 30, 1920, the evidence satisfactorily establishes that the B. J. Melton estate had on hand in

the Farmers' Deposit Bank $1,173.78, and that on July 31, 1920, there was withdrawn from that account the sum of $1,000. It is true that on that date Mary Melton opened an account in her own name with the Taylor National Bank by a deposit of currency in the amount of $700, but there is no explanation in the record of where the money came from to buy the $1,000 certificate of deposit of July 31, 1930, except the unescapable inference that it was from the proceeds of the $1,000 withdrawn from the Farmers' Deposit Bank. The $700 deposit made by Mary E. Melton in her own name on July 31, 1920, had by May 4, 1927, grown to $1,130, and on that date Mrs. Melton took a certificate of deposit for $1,000 running in her own name. It is the renewal of this certificate which is the subject-matter of this suit. When Mrs. Melton deposited the $700 in 1920 she had the cashier of the bank write in her passbook that it was subject to the check of her brother, Dick Newton, in case she should die. The record in this case discloses a scrupulous care on the part of Mrs. Melton in keeping her money affairs separate and distinct from those of the estate of her husband. But the Melton children insist that, as Mrs. Melton had no money when her husband died, the $700 must necessarily have represented part of his estate, probably the proceeds of the sale of some of the personal property he left at his death, and which this record shows Mrs. Melton later disposed of. There was ample evidence, however, to establish that Mrs. Melton did have a considerable sum of money belonging to herself at the time of the death of her husband. It is true that, during the lifetime of her husband, the house in which they were living burned, and that the evidence satisfactorily establishes that in the fire Mrs. Melton lost quite a sum of money, which was burned. But there was ample evidence to establish that this fire occurred in the year 1916, and that Mrs. Melton did not lose all she had in that fire. The evidence on the part of the Melton children to show a later date of the fire was vague and unsatisfactory. The contractor who rebuilt the house put the date of his work in 1916, taking it from the records of his time book, and further remembering it as the year of the death of his wife. The records of the Bank of Campbellsville show that on March 14, 1917, almost a year after the fire, Mrs. Melton had on deposit there in her name the sum of $350. The record further

discloses that in his lifetime and after the fire, her husband, B. J. Melton, stated that his wife had of her own over $1,500. While it is true Mrs. Melton disposed of some of the personal property left by her husband, yet she also had to pay for his funeral expenses, his medical bills, including one for an operation, and a bill for a monument which was erected over his grave. The record shows Mrs. Melton to have been an industrious and hard working woman. During her life she had the right to the entire income from the estate, and the appellants themselves have established that the income was more than sufficient to support her in the manner in which she lived. This would permit of considerable savings from the income, to all of which Mrs. Melton was entitled. Two years had elapsed from the date of the death of her husband until she opened the account of $700. We cannot say in the light of all this evidence that the finding of the court that the bank deposit which by 1927 had grown to $1,000 was not Mrs. Melton's own funds.

Some argument is made by the Melton children that it was the duty of Mrs. Melton's representatives to account for the personal property which she had received from her husband's estate, and which she had disposed of; but this was not a suit for an accounting or a settlement of B. J. Melton's estate, but was a suit to recover a specific bit of property, and the question involved herein is not whether Mrs. Melton's estate is liable for any conversion of the personal property left by her husband, but whether this $1,000 certificate of deposit represents her money or that of her husband. Not only is the finding of the court that it represents Mrs. Melton's money not flagrantly against the evidence, but we regard it as being supported by the preponderance of the evidence. Therefore, so far as the appeal of the Melton heirs is concerned, the judgment must be affirmed.

Coming to the appeal of the Dick Newton estate, we find that it is practically conceded that the facts of this case are strikingly similar to the facts of the case of Combs v. Roark, 206 Ky. 454, 267 S. W. 210; second appeal, 221 Ky. 679, 299 S. W. 576. And that under the authority of that case the court was well warranted in deciding that the Dick Newton estate had failed to establish a gift of the certificate to Dick Newton by his sister. It is insisted, however, that, had the court admitted the evidence of the widow and son of Dick Newton, the gift would have been established. However, as both of these

witnesses were interested, the court properly excluded their testimony under the rule laid down in both opinions in the Roark case. It is argued, however, that the court permitted the Melton children to testify, but did not permit the Newton heirs to testify. The testimony of the Melton children had nothing to do with the question of the alleged gift to Dick Newton, but was confined to the question whether the certificate represented money belonging to the estate of B. J. Melton or not. Whether the testimony of these Melton children was competent or not, its reception could not affect the issue involved between the Dick Newton estate and the Mary Melton estate, and inasmuch as the children of B. J. Melton lost their case, the admission of their evidence, even though incompetent, did not hurt the estate of either Dick Newton or Mary Melton, and hence could not serve as a basis for the admission of the incompetent testimony of Dick Newton's widow or son.

Finding no error in the judgment of the trial court, it is affirmed.